Frank E. JOHNSON and Carrie L. Johnson, Plaintiffs and Appellants,

v.

Quentin E. GRAY and Linda L. Gray, Defendants and Appellees.

Civ. No. 9266.

Supreme Court of North Dakota.

March 24, 1977.

Zuger & Bucklin, Bismarck, for plaintiffs and appellants; argued by Robert V. Bolinske, Bismarck.

Morris A. Tschider, Bismarck, for defendants and appellees; argued by Dennis A. Schneider, Bismarck.

Robert P. Brady, Asst. Atty. Gen., Bismarck, for intervenor, Atty. Gen.

ERICKSTAD, Chief Justice.

The issue in this case is whether the trial court erred in granting a summary judgment of dismissal of the complaint of Frank E. Johnson and Carrie L. Johnson which alleged four bases for terminating a contract for deed wherein the Johnsons had agreed to sell their farm consisting of approximately 235 acres, excluding only a small plot on which their home is located, to Quentin E. Gray and Linda L. Gray at a price of $200 per acre.

The Grays were to pay the total purchase price of $47,000 as follows:

"1.  $2,000.00 cash, payable on or before February 1, 1976.

"2.  $45,000.00 balance on contract, payable in equal annual principal in-

stallments of $2,500.00 per year commencing February 1, 1977, with payment of like amount on the first of each successive February 1 until paid in full. This contract shall accrue interest at the rate of five percent (5%) per annum on the unpaid balance of the contract with interest to commence January 1, 1976. No interest shall be payable during the year 1975 because of reservation of possession of sellers as hereinafter set forth."

The pertinent part of the contract relative to the payment of taxes and insurance reads:

"The said parties of the second part further promise and covenant to pay all taxes and assessments that may hereafter be levied and assessed upon said property before the same or any part thereof became delinquent, beginning with the payment of taxes assessed and levied, or to be assessed or levied, for the year 1976; (for the year 1975, parties of the first part shall pay the taxes assessed against the quarter section which they reserve for pasturing cattle and parties of the second part shall pay the taxes assessed against the remaining 80 acre parcel). It is further covenanted and agreed that any buildings and improvements now on said land, or which shall hereafter be erected, placed, or made thereon, shall not be removed therefrom, but shall be and remain the property of parties of the first part until this contract shall be fully performed by the parties of the second part; and said parties of the second part further covenant and agree, at their own expense, to keep the buildings on said premises at all times insured . . . ."

The contract further provided that, in the event that the purchasers defaulted in connection with any of the conditions of the contract, "[The sellers] may, at their option, by written notice, declare the whole sum above specified as purchase price to be due and this contract cancelled and terminated, and all rights, title and interest acquired upon the premises, and all payments made hereunder shall belong to said parties of the first part as liquidated damages for breach of this contract by said parties, said notice to be in accordance with the statute in such case made and provided."

The contract specifically provided for the peaceable surrender of the premises as follows:

"Further, after service of notice and failure to remove, within the period allowed by law, the default therein specified, said parties of the second part hereby specifically agree, upon demand of said parties of the first part, quietly and peaceably to surrender to them possession of said premises, and every part thereof, it being understood that until default, said parties of the second part are to have possession of said premises."

The contract was dated the 24th of March, 1975, but apparently was signed, which we may judge from the notary acknowledgment section, on the 23rd of April, 1975.

On February 5, 1976, service of a notice of cancellation was made upon the Grays, the pertinent part of which notice reads:

"YOU ARE HEREBY NOTIFIED that the sellers elect to declare the entire purchase price and all remaining installments forthwith due and payable with accrued interest because of your default as follows: (1) failure to pay the first annual installment in the amount of $2,000.00 cash payable on or before February 1, 1976, with interest thereon, (2) Failure to pay required taxes and (3) Failure to obtain the required insurance.

"Pursuant to Section 32–18–04 of the North Dakota Century Code, you will have one year from the date of service upon you of this Notice of Cancellation in which to perform all of your obligations under the said contract along with payment of the cost of this notice herein and any subsequent occurring obligations under the said contract, or the said contract shall be cancelled."

In the second amended complaint the Johnsons asserted five causes of action in-

cluding (1) failure of consideration, (2) unconscionability, imposition, and fraud, (3) the right to cancel the contract on equitable grounds, (4) the unconstitutionality of a part of Section 32–18–04(2), N.D.C.C., and (5) the right to money damages for the removal of hay. In their prayer for relief, they ask that the court declare the purported contract for deed null and void pursuant to the Declaratory Judgment Act, Chapter 32–23, N.D.C.C. In the alternative, they ask that the court cancel the contract or declare the offending part of Section 32–18–04(2), unconstitutional. Additionally, they ask for damages in the amount of $2,500 plus costs and disbursements.

The Grays answered by, in essence, generally denying the complaint and by asserting a counterclaim. In their prayer for relief, they assert:

"I.

"That the Complaint and its five (5) causes of action be in all things denied and dismissed.

"II.

"That the Court enter its Order declaring, pursuant to Chapter 32–23, NDCC, the contract to be valid and enforceable.

"III.

"That the Court order specific performance of the contract by the plaintiffs herein.

"IV.

"That in the alternative, if specific performance is impossible or impractical, the defendants ask for special damages pursuant to Section 32–03–13, NDCC.

"V.

"The defendants pray for general damages in the sum of not less than $5,000.00, with interest.

"VI.

"The defendants pray for treble damages pursuant to Section 32–03–29, NDCC.

"VII.

"The defendants pray for damages because of the wrongful occupation of this real property by the plaintiffs, said measure of damages being found in Section 32–03–21, NDCC.

"VIII.

"The defendants pray for their costs and disbursements herein."

Shortly prior to the day scheduled for the commencement of the trial in this case, the Grays filed a motion for summary judgment based upon the pleadings, attached exhibits, affidavits, and the balance of the record. In the attached affidavit the Grays argued issues of law and fact relative to the five causes of action. In response thereto the Johnsons filed a document entitled, Combined Affidavit and Memorandum in Opposition to Defendants' Motion for Summary Judgment, in which both law and facts were argued.

The trial court, in considering the documents and hearing oral argument on the issues, granted a motion for summary judgment of the complaint on the basis that in sending the statutory notice of cancellation, the Johnsons elected their remedy. The court concluded its remarks by saying:

"Accordingly, the Court finds the proper remedy is cancellation and dismisses this lawsuit. The cancellation, in effect, is as of February 1st, 1976, with whatever statutory provisions were proper at that time.

"The Court believes that that allows ample time yet for redemption under the statute. The Court, because of the nature of this matter, awards costs to neither party."

The pertinent part of the order granting the motion relating to the findings of fact and the conclusions of law, reads:

". . . the Court herewith determines there is no dispute as to the following material facts:

"1. The parties entered into a written Contract for the purchase of real property dated the 23rd day of April, 1975;

"2. That said Contract was and is supported by ample and valid consideration;

"3. That on February 1, 1976, the defendants were in default of said Contract For Deed;

"4. That said Contract recites that time is of the essence as to payment of money to be made pursuant to said Contract;

"5. That the plaintiffs after said default served upon the defendants a Notice of Cancellation of said Contract For Deed.

"From said facts, the Court determines the following as a matter of law:

"1. That the Notice of Cancellation of the Contract For Deed is valid and binding upon the parties;

"2. That the plaintiffs herein have made an election of remedies and have elected to cancel said agreement pursuant to the Contract For Deed;

"3. That said cancellation is now in effect and that the defendants have the statutory period of time of one (1) year for redemption from the date of February 1, 1976."

■ From the trial court's oral statements at the close of the oral arguments and from the findings of fact and conclusions of law which we have referred to, we conclude that the trial court considered only the first cause of action and after finding that the contract was supported by valid consideration, applied the doctrine of election of remedies and concluded that the complaint should be dismissed. In so doing, the court erred.

With the development of the Rules of Civil Procedure, patterned after the Federal Rules of Civil Procedure, which are designed to eliminate the formalities of common law pleading, we think it incongruous and improper to apply the doctrine of election of remedies, which came to us with the common law and has now been abrogated in the country of its origin.[1]

There is no showing that the Grays relied to their detriment on the purported election by the Johnsons. Nor has any other policy been argued for application of this harsh doctrine. Indeed, some commentators urge that no policy now exists for the doctrine that cannot be adequately covered by another doctrine, such as estoppel or res judicata. See D. Dobbs, Remedies § 1.5 (1973). Without concluding that the doctrine is abrogated in our State, we hold that it should not be applied in this case.

■ Had the statutory time elapsed after the service of the notice, and then had the sellers further proceeded to comply with Chapter 32–18, N.D.C.C., by filing the notice with the register of deeds, the sellers might have been deprived of initiating an action upon another basis. But, as the sellers commenced the action herein prior thereto, it is our view that they are not precluded from bringing the action.[2]

■ Our analysis of the case law in our State, indicates that the proceedings permitted under Chapter 32–18, N.D.C.C., to terminate a land contract, are not exclusive.[3]

Having reviewed the entire record before us in the light most favorable to the one against whom the motion for summary

---

1. "The doctrine of election of remedies has been called a delusion and a judicial weed. At the least, it is an anachronism that should not have survived the adoption of code pleading, and practically all who have discussed the doctrine state that it should be abandoned as a rule of procedure.

"This doctrine, which provides that where a party who has two inconsistent remedies chooses one he cannot thereafter pursue the other, developed from the common law rule that a party cannot assume inconsistent positions before a court. 'A man cannot at the same time blow hot and cold.' However, as a result of procedural reforms which allow the joinder of claims and parties, the doctrine is no longer followed in England." Fraser, *Election of Remedies: An Anachronism,* 29 Okl.L.Rev. 1 (1976).

2. "Originally, a plaintiff was deemed to have made an irrevocable election when he filed his action so that a second suit on an inconsistent theory would be precluded regardless of the outcome of the first, but most jurisdictions now hold that an action must be prosecuted to judgment before a party is deemed to have made an election." 29 Okl.L.Rev. 1, *supra,* at 2.

3. Leahy, *Cancellation of Land Contracts,* 32 N.D.L.Rev. 5 (1956).

judgment of dismissal is made, we conclude, without attempting to set forth the facts or issues in detail, that there are genuine issues of material facts in this case that militate against granting such a judgment, and that it would therefore be proper to permit those issues to be further explored along with the issues of law as the facts are more fully supported through the receipt of admissible evidence at the trial. Having so concluded, it follows that we must set aside the judgment dismissing the complaint, and remand the case to the trial court for trial on all causes of action.

SAND, VOGEL, PEDERSON and PAULSON, JJ., concur.