Frank E. JOHNSON and Carrie L. Johnson, Plaintiffs-Appellants,

v.

Quentin E. GRAY and Linda L. Gray, Defendants-Appellees.

Civ. 9266–A.

Supreme Court of North Dakota.

May 3, 1978.

Zuger & Bucklin, Bismarck, for plaintiffs-appellants; argued by Robert V. Bolinske, Bismarck.

Richard P. Rausch, Bismarck, for defendants-appellees.

PAULSON, Judge.

This is an appeal by Frank E. and Carrie L. Johnson from the partial summary judgment of the Burleigh County District Court, entered October 21, 1977, dismissing the Johnsons' sixth cause of action contained in their third amended complaint against Quentin E. and Linda L. Gray. This is the

second time these parties have been before this court on matters involving a contract for deed, executed on March 24, 1975, wherein the Johnsons agreed to sell their farm, excluding a 5-acre tract on which their home is located, to the Grays. The facts as they are stated in *Johnson v. Gray,* 251 N.W.2d 923 (N.D.1977), are by this reference incorporated herein, and we will avoid an unnecessary reiteration of those facts in this opinion.

The Johnsons commenced an action in the Burleigh County District Court requesting the court, *inter alia,* to cancel the contract for deed upon various legal theories. In their sixth cause of action contained in their third amended complaint, the Johnsons requested the district court to declare the contract for deed "terminated, null and void, and of no effect" because the Grays failed to correct certain defaults, as required by Chapter 32–18 of the North Dakota Century Code, within one year following notice of cancellation.

On August 31, 1977, the Johnsons moved for a partial summary judgment on this sixth cause of action, requesting the court to declare the contract for deed canceled under the provisions of Chapter 32–18, N.D. C.C.

On October 21, 1977, the district court entered a partial summary judgment on behalf of the Grays, dismissing the Johnsons' sixth cause of action, on the ground that the Johnsons failed to serve upon the Grays a proper notice of cancellation as required by Chapter 32–18, N.D.C.C. The Johnsons now appeal from that partial summary judgment.

In its Amended Order for Judgment the district court, pursuant to Rule 54(b) of the North Dakota Rules of Civil Procedure, made an express determination that there was no just reason for delay and directed entry of judgment. Consequently, the October 21, 1977, partial summary judgment of the district court is an appealable judgment. *See, Melland Firestone, Inc. v. Streich,* 226 N.W.2d 141 (N.D.1975); *Hodny v. Hoyt,* 224 N.W.2d 826 (N.D.1974).

The following issues have been raised on appeal for determination by this court:

1. Whether the Johnsons served the Grays with an effective notice of cancellation, pursuant to Chapter 32–18, N.D.C.C.; and

2. Whether the Grays corrected their defaults under the contract for deed, pursuant to the provisions of § 32–18–04, N.D.C.C., so as to reinstate the contract.

Chapter 32–18, N.D.C.C., provides a strict procedure for cancellation of a contract for the future conveyance of real estate. Aside from bringing a court action this is the only method by which a contract for deed can be canceled. *Rohrich v. Kaplan,* 248 N.W.2d 801 (N.D.1977); *Vail v. Evesmith,* 62 N.D. 99, 241 N.W. 719 (1932). If a person elects to use this statutory cancellation procedure, a notice of default must be served upon the defaulting party, and the defaulting party then has either six months or one year to correct the defaults upon which the cancellation notice was based, pursuant to § 32–18–04, N.D.C.C.

The Johnsons, choosing to use this statutory cancellation procedure, served a notice of cancellation upon the Grays, on February 5, 1976, the pertinent part of which notice states as follows:

"YOU ARE HEREBY NOTIFIED that the sellers elect to declare the entire purchase price and all remaining installments forthwith due and payable with accrued interest because of your default as follows: (1) failure to pay the first annual installment in the amount of $2,000.00 cash payable on or before February 1, 1976, with interest thereon, (2) Failure to pay required taxes and (3) Failure to obtain the required insurance.

"Pursuant to Section 32–18–04 of the North Dakota Century Code, you will have one year from the date of service upon you of this Notice of Cancellation in which to perform all of your obligations under the said contract along with payment of the cost of this notice herein and any subsequent occurring obligations under the said contract, or the said contract shall be cancelled."

The Johnsons, through this notice, declared the entire unpaid balance due and payable in accordance with an acceleration clause provided in the contract for deed. According to the notice, the Grays were required, under § 32–18–04, N.D.C.C., to perform all obligations under the contract, *including payment of the entire accelerated balance,* within one year, to avoid cancellation of the contract for deed.

The first issue which this court must determine is whether the seller can accelerate the unpaid balance pursuant to the terms of a contract for deed and then cause a buyer to forfeit under Chapter 32–18, N.D.C.C., for failure to pay the accelerated balance. We conclude that, under Chapter 32–18, N.D.C.C., a seller cannot, upon a buyer's default, accelerate the payments due on a contract for deed and then base a forfeiture on the buyer's failure to pay the entire accelerated balance.

Under the contract for deed, the Johnsons, upon default by the Grays, were authorized to declare the entire purchase price immediately due and to cancel the contract. However, under the cancellation procedure of Chapter 32–18, N.D.C.C., of which the Johnsons freely chose to avail themselves, the Grays must be allowed to cure or correct their defaults in the manner specified by the statute.

Pursuant to the provisions of § 32–18–04, N.D.C.C., the Grays had one year from the service of notice of cancellation "to perform the conditions or comply with the provisions upon which the default shall have occurred." We do not believe that the Legislature intended, by the use of this language, to allow a seller to make payment of an accelerated balance one of the conditions with which the buyer must comply in order to reinstate the contract and to prevent forfeiture of his equitable interests in the property under this statute. The statutory language is explicit and unambiguous that the contract is reinstated when the buyer removes the defaults, within the statutory period, which were grounds upon which the contract was statutorily canceled. The cases of *Hampton Farmers Co-operative*

*Company v. Fehd,* 257 Iowa 555, 133 N.W.2d 872 (1965); and *Needles v. Keyes,* 149 Minn. 477, 184 N.W. 33 (1921), are directly in point.

The Minnesota cancellation and redemption statute in *Needles, supra,* is very similar to our present statute, Chapter 32–18, N.D.C.C. The Minnesota statute provided that, upon the buyer's default, the seller could serve the buyer with notice "specifying the conditions in which default has been made." The buyer then had thirty days to "comply with such conditions and pay the costs of service" in which event the contract would be reinstated. Upon the buyer's default in *Needles, supra,* the seller declared the entire principal immediately due and payable in accordance with an acceleration clause in the contract. The seller then served the buyer with a notice of cancellation which informed the buyer that he must, among other things, pay the entire accelerated balance within the statutory period to avoid cancellation of the contract under the Minnesota statute. The Minnesota Supreme Court held that the seller could not require payment of the accelerated balance as part of the cure to reinstate the canceled contract. In so holding, the court made the following statement:

"  .  .  . [The seller] elected to proceed under the statute for a strict foreclosure by his own act, and must, therefore, permit the vendee to cure his default on the terms and in the manner specified in the statute.

"Conceding that the vendor had the right to declare the deferred installments due and to enforce payment of them in a proper proceeding, we are unable to hold that in this proceeding he could make the payment of such deferred installments one of the conditions with which the vendee must comply in order to reinstate the contract. We think the Legislature did not intend to permit him, by his own act, to add to the conditions which the vendee must perform to cure his default and save his equitable rights. We think that the Legislature intended that the contract should not be forfeited, if, with-

in the prescribed time, the vendee removed such defaults as were made grounds of forfeiture by the terms of the contract itself. And we hold that in proceedings under this statute, the vendor cannot, by exercising an option to declare deferred installments due immediately, require the vendee to pay such deferred installments or forfeit his contract." *Needles, supra* 184 N.W. at 34.

Pursuant to § 32–18–04, N.D.C.C., the buyer is given a statutory period "in which to perform the conditions or comply with the provisions *upon which the default shall have occurred* . . .. Upon *such performance* and upon making *such payments,* together with the cost of service of such notice" the contract is reinstated. We believe this statute, like the statute in *Needles, supra,* entitles the buyer to reinstate the contract by performing only those conditions, the nonperformance of which gives the seller grounds to institute the statutory cancellation procedure. The law abhors a forfeiture, and if the meaning of a cancellation statute is ambiguous and susceptible of two constructions, that interpretation which mitigates against forfeiture should be adopted. We do not, however, believe that the pertinent language of Chapter 32–18, N.D.C.C., involved herein, is ambiguous. It clearly provides the manner in which a buyer can reinstate his contract for deed and prevent the forfeiture of his equitable interest. Payment of the entire accelerated balance is not a part of the statute's required procedure for correcting the default.

The Iowa Supreme Court, in the case of *Hampton, supra,* followed the holding in *Needles, supra.* In *Hampton, supra,* the sellers attempted to accelerate the entire balance under the provisions of an acceleration clause in their real estate contract and then cause the buyer to forfeit his rights under the contract for failure to pay the entire accelerated balance. The Iowa Supreme Court, in holding that a seller cannot accelerate the payments due on an installment contract and then base a forfeiture on the entire unpaid balance under the provisions of the Iowa cancellation statute, made

the following statement in *Hampton, supra* 133 N.W.2d at 874–875:

"From the vendors' standpoint forfeiture presents a swift and inexpensive remedy in the event of a default. A vendee can live. with such remedy to obtain the advantages of an installment contract and the usual low downpayments when other financing could not be obtained. The burden and risk would become intolerable if a minor default would allow vendors to accelerate all payments and reclaim the property and keep all payments made for failure to pay the entire balance. In many instances it would be impossible for vendees to get financing to pay off a large balance. Such result is contrary to the purpose of the statute which is designed to extend 'a little grace to a party in default who may be staggering under the load of his undertaking.' *Waters v. Pearson,* 163 Iowa 391, 397, 144 N.W. 1026, 1029. We do not aid the staggering vendee by piling the unpaid balance on top of the defaulted installments which are already a heavy burden."

We agree with this rationale of the Iowa Supreme Court, and we hold that a seller cannot accelerate payments under the terms of a contract for deed and then cause a forfeiture under Chapter 32–18, N.D.C.C., upon the buyer's failure to pay the accelerated amount.

The district court concluded that the Johnsons' notice of cancellation was ineffective because the notice, in addition to specifying defaults which had actually occurred, specified alleged acts of default which the buyers had not, in fact, committed. In this regard the notice stated that the buyers had defaulted in their failure to pay taxes and their failure to pay interest on the principal. The district court found that the taxes were not delinquent at the time the notice of cancellation was served and that the interest provided for under the contract was accruing but was not necessarily due and payable at the time the notice of cancellation was served. This court has previously determined in this opinion that the notice of cancellation was in error because

it attempted to require payment of the accelerated balance as part of the requirements upon which the Grays could reinstate the contract under § 32–18–04, N.D.C.C. The issue for our determination, therefore, is whether the Johnsons served an effective notice under Chapter 32–18, N.D.C.C. We conclude that they did.

Section 32–18–02, N.D.C.C., provides the requirements of the notice of cancellation to be served upon the buyer:

"*Default—Contents of notice.*—Whenever any default shall have been made in the terms or conditions of any such instrument for future conveyance of real estate or equity therein, and the owner or vendor shall desire to cancel or terminate the same, he, within a reasonable time after such default, shall cause a written notice to be served upon the vendee or purchaser, or his assigns, stating that such default occurred and that said contract will be canceled or terminated, and the time when said cancellation or termination shall take effect, which shall be as provided in section 32–18–04."

Thus, the notice must state the default or defaults upon which the seller is basing the cancellation, and it must also state that the contract will be canceled and the time when such cancellation will occur.

The notice served upon the Grays informed them that the contract would be canceled and that the Grays had one year from the service of the notice, under the provisions of § 32–18–04, N.D.C.C., to reinstate the contract and to prevent cancellation. It is undisputed that the notice also specified certain acts of default upon which the cancellation was based, which, in fact, the Grays had committed, including the failure to pay the first annual installment of $2,000.00 and the failure to acquire insurance upon the buildings. The notice, therefore, contained all items which were required under § 32–18–02, N.D.C.C. The fact that the notice also specified acts of default upon which the buyers had not in fact defaulted and that the notice also requested amounts payable which were not yet due and owing, does not render the

notice ineffective. *Hampton Farmers Cooperative Company v. Fehd,* 257 Iowa 555, 133 N.W.2d 872 (1965); *Forest Preserve Real Estate Improvement Corp. v. Miller,* 379 Ill. 375, 41 N.E.2d 526 (1942); *Votruba v. Hanke,* 202 Iowa 658, 210 N.W. 753 (1926); *Adams & McKee Land Co. v. Dugan,* 68 Cal.App. 226, 228 P. 681 (1924); *Montana Wheat Land Co. v. Northern Pac. Ry. Co.,* 308 Ill. 620, 139 N.E.2d 876 (1923); *Harris v. Seattle Land & Improvement Co.,* 122 Wash. 323, 211 P. 282 (1922); *Gaston v. Horn,* 158 Iowa 674, 138 N.W. 925 (1912).

The fact that the Johnsons specified acts which the Grays had not defaulted upon, in addition to specifying acts which the Grays had in fact defaulted upon, does not render the notice ineffective. Nor is the notice ineffective because it requested an amount in excess of that which was due. When the notice of cancellation under Chapter 32–18, N.D.C.C., contains matters with which the buyer disagrees or has a defense against, § 32–18–06, N.D.C.C. provides the method by which the buyer can have these matters determined. The buyer can request the district court, based upon proper affidavits, to enjoin the statutory cancellation of the contract and to direct that all further proceedings for the cancellation of the contract be had in the district court. In the instant case, the Grays did not seek to enjoin the statutory cancellation procedure under § 32–18–06, N.D.C.C.

We hold that the notice of cancellation served upon the Grays was an effective notice in compliance with the requirements of § 32–18–02, N.D.C.C.

The last issue for our determination is whether the Grays corrected their defaults under the contract for deed, pursuant to § 32–18–04, N.D.C.C., so as to reinstate the contract. We conclude that they did correct the defaults in accordance with the provisions of § 32–18–04, N.D.C.C.

Under the terms of the contract for deed the total purchase price for the land was $47,000.00, plus interest to accrue at 5 percent per annum on the unpaid balance. On January 6, 1977, approximately eleven months after receipt of the notice of cancel-

lation, the Grays tendered a check in the amount of $47,000.00 which they deposited with the clerk of the Burleigh County District Court. The $47,000.00 was tendered as the full amount due and owing to redeem the contract for deed. At the time of this tender of redemption, both the Johnsons and the Grays apparently held the incorrect assumption, advanced by the notice of cancellation, that payment of the entire accelerated balance was among the requirements under § 32–18–04, N.D.C.C., for the Grays to correct their defaults and to reinstate the contract. As this court has expressed previously in this opinion, the payment of the accelerated balance was not a requirement under § 32–18–04, N.D.C.C., imposed upon the Grays to correct their defaults. Consequently, the tender of $47,000.00 was far in excess of the amount which was required for the Grays to correct their defaults and reinstate the contract. However, this court cannot determine, on the record before us, the exact amount which was required for the Grays to correct their defaults under the contract for deed. For instance, there is no evidence in the record as to whether the Johnsons purchased insurance upon the buildings when the Grays failed to do so. Consequently, this court is not in a position to determine what would be an appropriate cure of the Grays' failure to purchase insurance upon the buildings. It also appears that a dispute remains as to the parties' intentions under the contract for deed with regard to when interest payments were to become due and payable. It may be necessary to receive evidence relating to the par-

ties' intentions upon executing the contract for deed regarding these matters before a determination can be made as to the exact amounts which were in default and the exact amounts which were required to cure these defaults. There is no doubt, however, that under any plausible construction of the contract for deed the tender of $47,000.00 was sufficient to cure all the defaults upon which the notice of cancellation was based.

We hold that the contract for deed was reinstated upon the Grays' tender of payment in accordance with § 32–18–04, N.D. C.C.

In accordance with the views expressed in this opinion, we affirm the district court's partial summary judgment, entered on October 21, 1977, which dismissed the Johnsons' sixth cause of action. We remand the case, however, for a determination by the district court of the exact amount which § 32–18–04, N.D.C.C., required the Grays to tender to correct their defaults upon which the notice of cancellation was based. We also remand the case for a trial of the remaining causes of action on their merits.

ERICKSTAD, C. J., and PEDERSON, VOGEL and SAND, JJ., concur.