[No. E024343. Fourth Dist., Div. Two. Jan., 26, 2000.]

CRYSTAPLEX PLASTICS, LTD., Plaintiff and Appellant, v.
REDEVELOPMENT AGENCY OF THE CITY OF BARSTOW,
Defendant and Respondent.

COUNSEL

Heenan Blaikie and Deborah F. Sirias for Plaintiff and Appellant.

Richards, Watson & Gershon, Anthony B. Drewry and Michael G. Colantuono for Defendant and Respondent.

## OPINION

**HOLLENHORST, J.**—The trial court sustained the demurrer of defendant Redevelopment Agency of the City of Barstow (Redevelopment Agency) to plaintiff's first amended complaint without leave to amend and ordered the action dismissed. Plaintiff appeals.

### STANDARD OF REVIEW

"Where a trial court sustains a demurrer without leave to amend, we review such action under the abuse of discretion standard. [Citations.] If there is a reasonable possibility that the pleading can be cured by an amendment, the trial court's ruling will be reversed. [Citation.] [¶] On review, we examine the Complaint's factual allegations to determine whether they state a cause of action on any available legal theory. [Citation.] We treat the demurrer as admitting all material facts which were properly pleaded. [Citation.] However, we will not assume the truth of contentions, deductions, or conclusions of fact or law [citation] and we· may disregard any allegations that are contrary to the law or to a fact of which judicial notice may be taken. [Citation.]" (*Interinsurance Exchange v. Narula* (1995) 33 Cal.App.4th 1140, 1143 [39 Cal.Rptr.2d 752].)

### THE FIRST AMENDED COMPLAINT

The complaint alleges that plaintiff Crystaplex Plastics, Ltd., contracted to supply and install a hockey rink at the Sportspark in Barstow. The Sportspark is owned by defendant Redevelopment Agency, and the general contractor on the construction project was Recreation Technologists, Inc. (Rectech). Rectech employed a subcontractor named Earth Inline Hockey, Inc. (EIH), and EIH contracted with Crystaplex. Crystaplex performed its obligations under the contract between September and December 1996.

On or about December 6, 1996, the Redevelopment Agency issued a check in the amount of $31,979 for the hockey rink. The check was made payable *jointly* to EIH and Crystaplex. The check was sent to EIH and EIH cashed it without paying Crystaplex. Crystaplex discovered these facts in April 1997.

Crystaplex then sued the Redevelopment Agency as drawer of the check. The Redevelopment Agency demurred, contending that the complaint failed to state a cause of action against it under California Uniform Commercial Code sections 3309, subdivision (a)(2) and 3310, subdivision (b)(4) because

it fails to allege the facts required for application of either of those sections.[1] Defendant's position was, and is, that these sections are intended to protect a payee whose check is lost, destroyed, or stolen. Defendant contended, and contends, that the facts alleged do not show that the check was lost, destroyed or stolen, and that the statutes are therefore inapplicable. The trial court agreed, and sustained the demurrer.

Plaintiff appeals, contending that the allegations of the complaint are adequate to state a cause of action for recovery for a lost, destroyed, or stolen check under sections 3309 and 3310, subdivision (b)(4).

## DISCUSSION

Accepting, as we must, the factual allegations of the complaint, it appears that Crystaplex was a materials supplier to a public works project owned by defendant Redevelopment Agency. Rectech was the general contractor and EIH was a subcontractor. The Redevelopment Agency apparently employed a joint check system to pay the general contractor, subcontractors, and material suppliers. "To protect themselves against mechanics' lien and bond claims, owners and contractors have adopted a custom of issuing checks with the supplier listed as a joint payee along with the subcontractor. The theory is that the subcontractor will pay the supplier when the endorsement is given, thus reducing the risk of a mechanics' lien or bond claim." (1 Acret, Cal. Construction Contracts and Disputes (3d ed. 1999) § 3.82, p. 243.)

As our Supreme Court describes it: "The use of joint checks is well established by custom and practice in the construction industry. [Citations.] [¶] When a subcontractor and his materialman are joint payees, and no agreement exists with the owner or general contractor as to allocation of proceeds, the materialman by endorsing the check will be deemed to have received the money due him. [Citations.] Inclusion of the materialman as payee makes clear that the maker of the check intends to discharge obligations owed the materialman. . . . [¶] The material man [sic] may protect himself by simply refusing to endorse the check until assured by escrow [or] other arrangement that he will recover his rightful share of the check. Because the materialman is positioned to demand immediate payment in exchange for his endorsement, the custom and use of joint checks is beneficial to materialmen. [¶] The joint check rule is likewise beneficial to owner

---

[1]Unless otherwise indicated, all statutory references are to the California Uniform Commercial Code. (§ 1101; *Bank of America v. Lallana* (1998) 19 Cal.4th 203, 206, fn. 1 [77 Cal.Rptr.2d 910, 960 P.2d 1133].)

and general contractor. They have contracted with the subcontractor—not the materialman—and are usually unaware of the nature and size of the materialman's claim against the subcontractor. The joint check rule provides a simple yet expeditious method for owner and general contractor to pay their debts to the person with whom they have contracted while eliminating the risk the subcontractor will not pay the person with whom he has contracted." (*Post Bros. Constr. Co. v. Yoder* (1977) 20 Cal.3d 1, 5-6 [141 Cal.Rptr. 28, 569 P.2d 133].)[2]

■ In this case, the owner issued a joint check to a subcontractor and a materialman. The owner allegedly sent the check to EIH, the subcontractor, and EIH allegedly cashed or deposited the check without obtaining the endorsement or consent of Crystaplex. In this action, Crystaplex has elected to proceed against the Redevelopment Agency, as drawer of the check, under sections 3309 and 3310, subdivision (b)(4). Accordingly, we only consider whether the plaintiff has stated a cause of action under those sections, and we do not decide or express any view as to Crystaplex's stop notice or other remedies.[3] Similarly, we do not consider the question of Crystaplex's remedies against the bank that cashed the check, nor do we need to decide whether the stop notice remedy is plaintiff's exclusive remedy under Civil Code section 3264, or whether, as plaintiff contends, the stop notice remedy is a cumulative remedy.

Section 3309 allows the payee of a check to enforce it against the drawer when the check has been lost or stolen. Specifically, it states: "(a) A person not in possession of an instrument is entitled to enforce the instrument if (1) the person was in possession of the instrument and entitled to enforce it when loss of possession occurred, (2) the loss of possession was not the result of a transfer by the person or a lawful seizure, and (3) the person cannot reasonably obtain possession of the instrument because the instrument was destroyed, its whereabouts cannot be determined, or it is in the

[2]However, as this case demonstrates, the risk of nonpayment is not totally eliminated by the joint check system. In this case, a third party, the subcontractor, allegedly misappropriated the check by forging the endorsement of Crystaplex, and neither the Redevelopment Agency nor the unpaid materialman is at fault. However, as discussed below, both bore the risks that the check would be lost, stolen or wrongfully negotiated, and the statute provides both parties' remedies in that situation.

[3]The Redevelopment Agency contends that its action in listing Crystaplex as a joint payee was gratuitous, as there was no contractual relationship between Crystaplex and the Redevelopment Agency. Except as discussed below, it is irrelevant whether the agency's decision was gratuitous or not, and, in any event it cannot be discerned from the allegations of the complaint or judicially noticeable facts whether the payment was gratuitous or not.

The Redevelopment Agency also filed a motion on August 3, 1999, requesting that we take judicial notice of certain pleadings in an action in Canada between EIH and Crystaplex. Finding the pleadings in the Canadian action to be irrelevant to the issues here, we deny the motion for judicial notice.

wrongful possession of an unknown person or a person that cannot be found or is not amenable to service of process. [¶] (b) A person seeking enforcement of an instrument under subdivision (a) shall prove the terms of the instrument and the person's right to enforce the instrument. If that proof is made, Section 3308 applies to the case as if the person seeking enforcement had produced the instrument. The court may not enter judgment in favor of the person seeking enforcement unless it finds that the person required to pay the instrument is adequately protected against loss that might occur by reason of a claim by another person to enforce the instrument. Adequate protection may be provided by any reasonable means."

■ "If a thief steals a check from a payee, the payee might turn to his or her drawer for payment. Section 3-309 allows a person who loses an instrument by misplacing it or theft to enforce it in certain circumstances. . . . [¶] Thus, a payee who receives a check in payment for services, and then loses the check while walking home, can still enforce the instrument. Similarly, if the payee was the victim of a mugging on the way home and the thief made off with the payee's wallet containing the check, the payee remains entitled to enforce the instrument. If, on the other hand, the drawer had entrusted a messenger with delivery of the check to the payee, and the messenger instead chose to flee to Jamaica with the check, the payee would not be able to enforce the instrument because the payee would not have had possession at the time of the loss. (The payee, not having been paid, could still enforce the underlying obligation, however.).)." (2 White & Summers, Uniform Commercial Code (4th ed. 1995) § 18-2, p. 211.) Thus, "[i]n the limited cases covered by 3-309 the payee may sue upstream against the drawer on a stolen (or lost) instrument, provided the payee indemnifies the drawer against the possibility of a second claim on the stolen check." (2 White & Summers, *supra*, § 18-1, p. 208.)

■ Section 3310, subdivision (b)(4) states: "(b) Unless otherwise agreed and except as provided in subdivision (a), if a note or an uncertified check is taken for an obligation, the obligation is suspended to the same extent the obligation would be discharged if an amount of money equal to the amount of the instrument were taken, and the following rules apply: [¶] . . . [¶] (4) If the person entitled to enforce the instrument taken for an obligation is a person other than the obligee, the obligee may not enforce the obligation to the extent the obligation is suspended. If the obligee is the person entitled to enforce the instrument but no longer has possession of it because it was lost, stolen, or destroyed, the obligation may not be enforced to the extent of the amount payable on the instrument, and to that extent the obligee's rights against the obligor are limited to enforcement of the instrument."

"Section 3-310, a tidying up provision, states the legal effects on the underlying obligation when one takes a negotiable instrument for that obligation. The section also states the legal effects on the underlying obligation when the obligation on the instrument is discharged. The 'underlying obligation' is the original obligation between the parties which led to issuance of the negotiable instrument in the first place." (2 White & Summers, Uniform Commercial Code, *supra,* § 16-14, p. 135.)

The Uniform Commercial Code comment to section 3-310 discusses subdivision (b)(4) as follows: "There was uncertainty concerning the applicability of former Section 3-802 to the case in which the check given for the obligation was stolen from the payee, the payee's signature was forged, and the forger obtained payment. The last sentence of subsection (b)(4) addresses this issue. If the payor bank pays a holder, the drawer is discharged on the underlying obligation because the check was paid. Subsection (b)(1). *If the payor bank pays a person not entitled to enforce the instrument, as in the hypothetical case, the suspension of the underlying obligation continues because the check has not been paid.* Section 3-602(a). *The payee's cause of action is against the depository bank or payor bank in conversion under Section 3-420 or against the drawer under Section 3-309.*" (U. Com. Code com., reprinted at 23B West's Ann. Cal. U. Com. Code (2000 supp.) foll. § 3310, p. 54, italics added.) This is precisely the situation here, because the payee who negotiated the check was not entitled to enforce the instrument. The joint payees, acting together, were the persons who could enforce the instrument: "If an instrument is payable to two or more persons not alternatively, it is payable to all of them and may be negotiated, discharged, or enforced only by all of them." (§ 3110, subd. (d); see also, § 3301.)

The Uniform Commercial Code comment to section 3-310 goes on to state that, in the situation in which the check is unpaid, the debtor is not required to issue a replacement check, the last sentence of subdivision (b)(4) applies, and "[t]he creditor may not enforce the obligation of debtor for which the check was taken. The creditor may assert only rights on the check. *The creditor can proceed under Section 3-309 to enforce the obligation of the debtor, as drawer, to pay the check.*" (U. Com. Code com., reprinted at 23B West's Ann. Cal. U. Com. Code, *supra,* foll. § 3310, p. 53, italics added.) It is therefore apparent that the payee may maintain an action against the drawer, leaving the drawer to cross-complain against any or all of the other banks involved in the check-cashing process.

The Redevelopment Agency cites the foregoing language and argues that it was discharged by payment to a holder. We disagree. As discussed herein,

a check payable jointly to two or more payees can only be negotiated by all of them, and there is no discharge by payment to only one of the payees. (§§ 3110, subd. (d), 3116.)

Since plaintiff bases its cause of action on section 3309, it is apparent that plaintiff must allege the elements stated in that section. Defendants contend that plaintiff has not done so.

The most significant issue is whether there is a sufficient allegation to meet the first requirement of section 3309: that "the person was in possession of the instrument and entitled to enforce it when loss of possession occurred . . . ." The complaint only alleges that the check was delivered to a joint payee. It does not allege that plaintiff was ever in actual possession of the check. The issue thus presented is whether the lack of such an allegation is fatal to plaintiff's cause of action.

Plaintiff relies on a constructive possession theory, arguing that delivery of the check to a joint payee is sufficient to satisfy the possession requirement. Plaintiff relies on *GMAC v. Abington Cas. Ins. Co.* (1992) 413 Mass. 583 [602 N.E.2d 1085]. In that case, an insurance company issued a check made jointly payable to the insured and GMAC, the holder of a security interest in the vehicle. The check was delivered to the insured, who deposited it without GMAC's endorsement. The insured therefore received full payment, and GMAC got nothing. GMAC, as a joint payee, sued the insurance company as drawer of the check. The Massachusetts Supreme Judicial Court held that delivery of a check to one of the joint payees constitutes delivery to all joint payees. (*Id.,* at p. 1087.) Accordingly, it found that GMAC had stated a cause of action against the insurance company, and the court specifically held that GMAC, as the owner of a lost instrument, had a cause of action under Uniform Commercial Code section 3-804 (the predecessor to U. Com. Code, § 3-309). (*GMAC v. Abington Cas. Ins. Co., supra,* 602 N.E.2d 1085, 1088-1089.)

The code defines delivery as an actual transfer of possession. (§ 1201, subd. (14), made applicable by § 3103, subd. (d).) Section 3110, subdivision (d) provides that an instrument made payable to two or more persons, not alternatively, is "payable to all of them and may be negotiated, discharged, or enforced only by all of them." Thus, joint payees are treated as one, and we agree with the Massachusetts court that delivery of the instrument to one of the joint payees is delivery to all of them.

Section 3110 is consistent with section 3420, which allows an action for conversion in certain circumstances by a payee who received "delivery of

the instrument either directly or through delivery to an agent or a copayee." The Uniform Commercial Code comment to section 3-420 states: "If a check is payable to more than one payee, delivery to one of the payees is deemed to be delivery to all of the payees." (U. Com. Code com., reprinted at 23B West's Ann. Cal. U. Com. Code, *supra*, foll. § 3420, p. 97.)[4] Accordingly, we conclude that there was delivery here and plaintiff sufficiently alleged possession of the check when it alleged that it was a joint payee of the check, and that the check was delivered to a copayee.

The Redevelopment Agency attempts to distinguish *Abington* by arguing that it concerned an underlying obligation, and there was no underlying contractual obligation here. It therefore finds any promise to pay to be gratuitous and unenforceable. However, Crystaplex is not suing on an underlying obligation—it is suing on the negotiable instrument. Under section 3310, the giving of a check merely suspends any underlying obligation until it is discharged by payment of the check. Here, of course, there was no discharge because all of the joint payees did not endorse the check. Under section 3310, subdivision (b)(4), the person entitled to enforce the instrument is limited to a suit on the instrument when the instrument is lost or stolen. Thus, the facts concerning the underlying obligation are essentially irrelevant. However, we note that, in *Abington*, the insurance company had no contractual relationship with GMAC. GMAC, as the company that provided the financing to enable the insured, Mr. Azevedo, to purchase the insured vehicle, was only named as an additional insured on the policy to protect its security interest in the vehicle. The insurance contract was between Abington and its insured, Mr. Azevedo. There was no direct contract between GMAC and Abington. (*GMAC v. Abington Cas. Ins. Co., supra,* 602 N.E.2d 1085.) Thus, the fact that there was no direct contract between Crystaplex and the Redevelopment Agency is irrelevant and *Abington* is not properly distinguishable on this ground.

In addition, we note that the Redevelopment Agency's payment was not totally gratuitous, as it was merely paying for the hockey rink installed on its property and, as discussed above, owners commonly use a joint payment system on construction projects because it provides certain protections to them.

The second requirement of section 3309 is that the loss of possession was not the result of a transfer by the person or a lawful seizure. The complaint alleges that EIH received and negotiated the check without the knowledge,

---

[4]For a discussion of the joint payee issue in the context of an action against a drawee bank, see 1 Clark, The Law of Bank Deposits, Collections, and Credit Cards (rev. ed. 1999) section 12.03[4].

consent or endorsement of the check by Crystaplex. This is a sufficient allegation to establish that Crystaplex did not transfer the check.

The third requirement of section 3309 is that the person cannot reasonably obtain possession of the instrument. In our view, the allegation of the complaint that the check has been negotiated without the consent of a joint payee is sufficient to meet this requirement because such a negotiation would normally require a forged endorsement. In other words, we agree with Crystaplex that its use of the phrases "illegally taken," "unlawful negotiation" and "without Plaintiff's knowledge, consent or endorsement" are the functional equivalents of alleging that the check was stolen and the endorsement was forged.

We therefore conclude that Crystaplex has alleged a cause of action for recovery of the amount of the check from the drawer of the check, defendant Redevelopment Agency. The Redevelopment Agency may proceed to recover its loss from the subcontractor that apparently forged the endorsement on the check, or against the bank that honored the forged check.

### DISPOSITION

The judgment is reversed. Crystaplex to recover its costs on appeal.

Ramirez, P. J., and Gaut, J., concurred.