2003 ND 58

**Suzanne Kearns CANNADAY,**
**Plaintiff and Appellee,**

v.

**Douglas Edward CANNADAY,**
**Defendant and Appellant.**

**No. 20020185.**

Supreme Court of North Dakota.

April 15, 2003.

Suzanne Kearns Cannaday, pro se, Larimore, for plaintiff and appellee; no brief filed.

Douglas Edward Cannaday (argued), pro se, Vinton, VA, for defendant and appellant.

MARING, Justice.

[¶ 1] Douglas Cannaday appealed from a judgment revoking his legal separation from Suzanne Cannaday and awarding them a divorce. We hold the 1998 property division was final and not reviewable and the award of spousal support to Suzanne was not clearly erroneous, and we affirm.

I

[¶ 2] Douglas and Suzanne Cannaday were married in October 1967. They have three children of their marriage, all of whom are adults. Douglas is retired from the United States Air Force, but the parties were married during the entire 26 years that Douglas served in the military. Suzanne has a high school education. She followed her husband to various duty stations while he was in the military, raising the children and providing home schooling for them. She also worked at various

temporary jobs to supplement the family income.

[¶ 3] The parties were legally separated in November 1998. On December 11, 2001, Douglas moved the court, under N.D.C.C. § 14–06–05,[1] to revoke the parties' legal separation and to grant them a divorce. After an evidentiary hearing, the district court granted the motion, revoking the separation and granting the parties a divorce on the grounds of irreconcilable differences. The court found the property division and award of spousal support entered as part of the 1998 separation judgment were equitable and refused to alter those decisions. The court, however, clarified the parties' responsibilities regarding title to the marital home and payment of debt.

## II

[¶ 4] Douglas asserts the district court committed several errors in distributing the marital property and in awarding Suzanne spousal support.

[¶ 5] Section 14–05–29, N.D.C.C., provides:

At any time after a decree for separation has been granted, the court may revoke the decree based upon any regulations or restrictions the court imposed in the decree. Application for revocation may be made by either party to the decree. The party making the application for revocation shall provide to the other party to the decree at least ten days' and not more than twenty days' notice of the application. Service must be made in the same manner as service of a summons in a civil action. If it appears to the court at the hearing of the application that reconciliation between the parties to the marriage is improbable, the court shall revoke the separation decree and, in lieu of that decree, shall render a decree divorcing the parties. If the court has not previously done so, the court shall provide for the equitable division of the property, shall make orders with respect to any minor children, and may provide for the payment of support to either party by the other.

Under this statute, when the court revokes a separation decree and enters a divorce decree it shall, if not previously done, "provide for the equitable division of the property ... and may provide for the payment of support" by either party. The rules pertaining to the division of property are the same in a separation action as in a divorce action, and the division must be an equitable one. *Fedora v. Fedora,* 403 N.W.2d 10, 14 (N.D.1987). When the district court grants a separation and makes a distribution which it intends to be final, the separation judgment is binding upon the parties, and it is improper for the court to subsequently alter the property division under the statute. *Id.* at 15.

## III

[¶ 6] Douglas asserts the district court erred in awarding Suzanne fifty percent of his military retirement pay. Under N.D.C.C. § 14–05–24, a district court must make an equitable distribution of the property and debts of divorcing parties.

[¶ 7] In awarding Suzanne fifty percent of Douglas' retirement pension as part of the property division in the November 1998 judgment, the court found:

[Suzanne] and [Douglas] were married the entire time that [Douglas] was in the U.S. Military. [Douglas] retired after

---

1. Chapter 14–06, N.D.C.C., was repealed by the 2001 legislature, and N.D.C.C. 14–05–29 was enacted, effective August 1, 2001, as the new statute dealing with revocation of separation decrees. S.L.2001, ch. 149, §§ 8 and 13.

26 years in the U.S.A.F. [Douglas], throughout his military was able to move up in rank retiring as a Sr. MSGT. Sgt., an E–8, a level achieved only by 3% of the military NCO's ·according to [Douglas]. The skills, training, and status of his military career development has left [Douglas] in a position of superior marketability for future employment as compared to [Suzanne]. By contrast, [Suzanne], throughout the parties marriage, has not developed any skills, training, education or job marketabilities as compared to [Douglas]. [Suzanne] has only 12 years of schooling completed prior to. the parties marriage. [Suzanne] has followed [Douglas] from duty station to duty station, raising the children as the primary custodial parent, implementing "home schooling" of the children, and acting as homemaker throughout the marriage. [Suzanne] was exclusive caretaker of the children when [Douglas] had TDY duty tours. [Suzanne] otherwise worked "tag along" jobs at various assignment locations to supplement family income as the parties moved from station to station. [Suzanne] currently has no career, and has no retirement of her own. [Suzanne] clearly was in support of this family unit and [Douglas'] military career.

[¶ 8] It appears the district court intended the division of property in 1998 to be a final division. Nothing in that separation judgment indicates it was intended to be only temporary or that the division was subject to modification. Consequently, we hold the division is binding on the parties and not subject to review by the district court in revoking the separation and awarding the parties an absolute decree of divorce. Although the district court, in awarding the divorce decree, reviewed the property division and refused to modify it on the ground it was equitable, we conclude the court's review constituted

harmless error. This Court will not set aside a correct result merely because the district court assigned an incorrect reason, if the result is the same under the correct law and reasoning. *Peters–Riemers v. Riemers*, 2001 ND 62, ¶ 15, 624 N.W.2d 83.

## IV

[¶ 9] Douglas asserts the district court erred in valuing the parties' marital home at $65,000. Because the home was part of the marital property, and the division was final upon entry of the separation judgment, we conclude it is not subject to review on the appeal from the divorce decree.

## V

[¶ 10] Douglas asserts the district court erred in awarding Suzanne $2,354 from the parties' checking account and also erred in ordering Douglas to pay $4,198 of a Mastercard AT & T debt. Those decisions were made as part of the 1998 judgment, and in the 2002 judgment the court clarified the responsibility of the parties going forward:

The only remaining issues are the refusal of [Douglas] to abide by the terms of the Separation Decree and pay [Suzanne] $4,453 and the need to have [Suzanne] quit claim her interest in the marital home to [Douglas]. [Douglas] has refused to pay [Suzanne] $4,453 as ordered in the Judgment. The Judgment also required the parties to each pay $2,099 towards the AT & T Mastercard. [Douglas] maintains he has paid more than his share of $2,099 on the AT & T Mastercard. [Suzanne] admits she has made no payments on this debt because she cannot afford to do so until she receives the $4,453 [Douglas] is to pay her. [Douglas'] Exhibit 10 indicates the current balance on the AT & T

Mastercard as of December 7, 2001 was $1,538.14 less the $50 payment in December. Accordingly, [Douglas] has paid approximately $561 toward [Suzanne's] share of the AT & T Mastercard debt. To simplify matters, the property and debt allocation shall be amended to require[ ] [Douglas] to assume full responsibility for the AT & T Mastercard debt. In exchange, [Douglas'] obligation to pay [Suzanne] $4,453 shall be reduced by her share of the AT & T Mastercard debt in the amount of $2,099. A money Judgment shall be entered against [Douglas] for $2,354 with interest[ ] accruing at 6% annum since November 5, 1998. The Judgment shall also be amended to require [Suzanne] to execute whatever legal documents are necessary to transfer her ownership interest in the marital home to [Douglas] within 30 days of entry of Judgment.

We conclude the district court's clarification of those issues did not disturb the original intent of the 1998 property division, and is not error.

## VI

[¶ 11] Douglas asserts the district court erred in awarding Suzanne spousal support of $450 per month for eight years. We summarized the purposes of rehabilitative and permanent spousal support in *Walker v. Walker*, 2002 ND 187, ¶¶ 14–15, 653 N.W.2d 722:

> Under N.D.C.C. § 14–05–24.1, a court "may require one party to pay spousal support to the other party for any period of time." Property division and spousal support are interrelated, and the *Ruff Fischer* guidelines also apply when determining whether spousal support should be awarded. Spousal support is aimed at balancing the burdens and disadvantages created by the divorce. Rehabilitative spousal support is

ordered to give a disadvantaged spouse an opportunity to become adequately self-supporting through additional training, education or experience. Permanent spousal support is generally appropriate when the disadvantaged spouse cannot be equitably rehabilitated to make up for the opportunities lost in the course of the marriage. Permanent spousal support may also be awarded when the marriage is of long duration and the dependent spouse has health problems or is of such an age that adequate rehabilitation is unlikely.

> A disadvantaged spouse is one who has foregone opportunities or lost advantages as a consequence of the marriage and who has contributed during the marriage to the supporting spouse's increased earning capacity. We have said "[a]ny spouse who remains at home, out of the workforce, in order to maintain a marital residence and act as a homemaker, any parent who remains out of the workforce if only to some degree in order to provide child care, has foregone opportunities and has lost advantages that accrue from work experience and employment history." "Furthermore, a valid consideration in determining whether a spouse is disadvantaged as a result of the divorce is whether there is a need to equitably balance the burdens created by the divorce where the parties cannot maintain the same standard of living apart as they enjoyed together."

(Citations omitted.) The district court's determination of spousal support is a finding of fact that will not be set aside unless clearly erroneous. *Orgaard v. Orgaard*, 1997 ND 34, ¶ 5, 559 N.W.2d 546. In considering the circumstances for awarding spousal support, the district court must take into account the needs of the disadvantaged spouse and the supporting spous-

es needs and ability to pay. *Sommer v. Sommer*, 2001 ND 191, ¶ 10, 636 N.W.2d 423.

[¶ 12] The findings made by the district court in dividing the military retirement pay are relevant to the issue of spousal support. In addition to those findings, the court made these additional relevant findings in granting the 1998 legal separation:

[Douglas] is currently on track to earn approximately $34,000 gross (before tax) wages for 1998 from his current employment. . . .

[Suzanne] is currently operating daycare out of her home. . . . Her day care operation expense is at approximately $150.00/month, leaving a pre-tax gross income of approximately $600.00 per month.

[Suzanne] is now 50 years old. Rehabilitative spousal support would only leave [Suzanne] employable from 54–55 years of age and beyond as 4 to 5 years is a reasonable period of time for rehabilitation. This would leave [Suzanne] marginally employable or effectively unemployable for the next 10 years or so which further effects her employability. . . .

Because of [Suzanne's] age, the significant difference in income between the parties, the questionable status of her employability should [Suzanne] undergo rehabilitative measures, mental health/depression issues for [Suzanne], and fault of [Douglas] for failure to assist [Suzanne] in taking the necessary steps to make their home safe and secure for [Suzanne] and because of the other findings stated above, [Suzanne] is awarded spousal support in the amount of $450.00, per month, from [Douglas] for 8 years.

In concluding the spousal support award made in 1998 would not be altered in the 2002 judgment awarding the parties a divorce, the district court found:

The Findings of Fact issued by Judge Smith adequately address why spousal support was ordered and why it was equitable. The circumstances which brought about a spousal support award remain relevant today. [Suzanne's] adjusted gross income for the year 2000 was $13,104.00. . . . [Douglas'] adjusted gross income for the year 2000 was $40,149.00. . . . Further, according to [Douglas'] testimony, he anticipates income of $41,000.00 for 2001. The reason for the income disparity is a result of the marriage as contemplated by the decree of separation.

In 1998, the district court quite obviously awarded spousal support to Suzanne to balance the burdens of disadvantage caused by the divorce. We conclude the district court's findings in 2002 that the original spousal support award was appropriate and that there was not a change of circumstances justifying a change in the award are not clearly erroneous.

## VII

[¶ 13] We hold the 1998 property division was final and not reviewable on appeal from the 2002 divorce decree. We also hold the district court did not err in awarding Suzanne spousal support. We, therefore, affirm the May 7, 2002 judgment of divorce.

[¶ 14] GERALD W. VANDE WALLE, C.J., WILLIAM A. NEUMANN, DALE V. SANDSTROM, and CAROL RONNING KAPSNER, JJ., concur.