2006 ND 175

STATE of North Dakota ex rel. NORTH DAKOTA HOUSING FINANCE AGENCY, Plaintiff and Appellee

v.

CENTER MUTUAL INSURANCE COMPANY, a North Dakota corporation, Defendant and Appellant.

No. 20050224.

Supreme Court of North Dakota.

Aug. 2, 2006.

Douglas Bruce Anderson, Assistant Attorney General, Office of Attorney General, Bismarck, N.D., for plaintiff and appellee.

Chris A. Edison, Storslee Law Firm, P.C., Bismarck, N.D., for defendant and appellant.

MARING, Justice.

[¶ 1] Center Mutual Insurance Company ("Center Mutual") appealed from a district court judgment holding Center Mutual liable to the North Dakota Housing Finance Agency ("NDHFA") for the amount of an insurance proceeds check paid over a forged endorsement. We affirm, concluding Center Mutual was not discharged on the improperly paid check and was liable to NDHFA for the amount of the check.

I

[¶ 2] In 1994, Brian and Penny Grieme purchased a house in Mandan. They financed the home with a first-time home buyer loan through Bank Center First and executed a mortgage in favor of the Bank. Bank Center First then assigned the loan and mortgage to NDHFA, the state agency that provides financing of home loans which are insured or guaranteed through the first-time home buyer program. Bank Center First continued to service the loan on behalf of NDHFA. The mortgage revenue bonds used to finance the Griemes' mortgage were held in trust by Norwest Bank of Minnesota ("Norwest").

[¶ 3] The mortgage required the Griemes to obtain insurance coverage for the home. The Griemes purchased a dwelling insurance policy from Center Mutual. NDHFA and Norwest were listed as loss payees in the insurance policy, and the insurance premium billing notices were mailed to Norwest and NDHFA, in care of Bank Center First.

[¶ 4] The house was damaged by a hail storm in 2001. Center Mutual's claims adjuster determined that the loss, after adjusting for a $500 deductible, was $4,378. On July 13, 2001, Center Mutual issued a check for $4,378, drawn on Bremer Bank, N.A., made payable jointly to "Brian D. Grieme & Norwest Bank of MN & ND Housing Finance." Center Mutual mailed the insurance check to Brian Grieme at his new address in Arizona.

[¶ 5] Grieme presented the check for payment to Wells Fargo Bank of Tempe. The check bore the endorsement signature

of Brian Grieme, and underneath in hand-printed block letters were the words "Norwest Bank" and "ND Housing Finance." The check was processed through the check collection system and was eventually returned to Bremer Bank for payment from Center Mutual's bank account. The check was paid, and the canceled insurance check was returned to Center Mutual.

[¶ 6] In November 2001, Bank Center First requested that Center Mutual provide it with a copy of the canceled insurance check. Bank Center First then informed Center Mutual that the endorsements of NDHFA and Norwest were forged. Center Mutual advised Bank Center First that it would contact Bremer Bank about the matter. Center Mutual and Bremer Bank ultimately refused to make payment to NDHFA. In the meantime, the Griemes had canceled the insurance policy, defaulted on the mortgage, and filed for bankruptcy.

[¶ 7] NDHFA sued Center Mutual seeking payment of the $4,378, claiming that Center Mutual had breached the terms of the insurance policy and the mortgage and that Center Mutual was liable to NDHFA on the forged check. On cross-motions for summary judgment, the district court determined that Center Mutual was not liable for breach of the insurance contract or the mortgage. The court concluded, however, that Center Mutual should have sought reimbursement for the forged check through the banks which had accepted the forged endorsement, and that Center Mutual was therefore liable to NDHFA for the amount of the check. Center Mutual has appealed, alleging the district court erred in granting summary judgment awarding $4,378 plus interest to NDHFA.

## II

[¶ 8] Summary judgment is a procedural device for the prompt resolution of a controversy on the merits without a trial if there are no genuine issues of material fact or inferences that can reasonably be drawn from undisputed facts, or if the only issues to be resolved are questions of law. *Farmers Ins. Exch. v. Schirado*, 2006 ND 141, ¶ 8, 717 N.W.2d 576. Whether the district court properly granted summary judgment is a question of law that we review de novo on the record. *Id.* at ¶ 9.

[¶ 9] Summary judgment is appropriate if the issues in the case are such that the resolution of any factual disputes will not alter the result. *State ex rel. Stenehjem v. FreeEats.com, Inc.*, 2006 ND 84, ¶ 4, 712 N.W.2d 828. In this case there are no disputed issues of material fact, and the relevant questions presented on appeal involve the interpretation of statutes. The interpretation and application of a statute is a question of law, which is fully reviewable on appeal. *Id.* at ¶ 5. Accordingly, this case was appropriate for resolution on the cross-motions for summary judgment.

## III

[¶ 10] Center Mutual contends the district court erred in holding it liable to NDHFA, because it owed no specific statutory duty to NDHFA to discover the forged endorsement and its obligation on the instrument was discharged when the check was accepted and paid by Bremer Bank. The dispositive issue presented on appeal is whether a joint payee whose endorsement was forged on an instrument has an action on the instrument against the drawer.

### A

[¶ 11] The district court concluded that Center Mutual had a duty under N.D.C.C. § 41–04–37 [U.C.C. § 4–406] to discover the forged endorsement and promptly no-

tify Bremer Bank. Section 41–04–37(3) provides:

If a bank sends or makes available a statement of account or items under subsection 1, the customer shall exercise reasonable promptness in examining the statement or the items to determine whether any payment was not authorized because of an alteration of an item or because a purported signature by or on behalf of the customer was not authorized. If, based on the statement or items provided, the customer should reasonably have discovered the unauthorized payment, the customer has a duty to give prompt notification to the bank of the relevant facts.

NDHFA concedes that N.D.C.C. § 41–04–37(3) does not apply to a forged endorsement, and waives any reliance on the statute.

■ [¶ 12] That does not, however, end our inquiry. This Court will not set aside a correct result merely because the district court assigned an incorrect reason, if the result is the same under the correct law and reasoning. *E.g., Cannaday v. Cannaday,* 2003 ND 58, ¶ 8, 659 N.W.2d 363; *Wilson v. Koppy,* 2002 ND 179, ¶ 14, 653 N.W.2d 68.

B

■ [¶ 13] The crux of this case lies in Center Mutual's contention that its obligation on the instrument was discharged when the draft was accepted and paid by Bremer Bank, and charged against Center Mutual's account. Center Mutual relies upon N.D.C.C. § 41–03–51(3) [U.C.C. § 3–414], which provides:

If a draft is accepted by a bank, the drawer is discharged, regardless of when or by whom acceptance was obtained.

Center Mutual thus contends its obligation to NDHFA was discharged when Bremer Bank accepted the check.

■ [¶ 14] Although N.D.C.C. § 41–03–51 states the general rule regarding discharge of a drawer, the Uniform Commercial Code contains a more specific provision expressly governing discharge when multiple payees are listed on an instrument. *See* 41–03–10(4) [U.C.C. § 3–110]. When there is a conflict between statutes, we will construe specific statutes to control general statutes. N.D.C.C. § 1–02–07; *Case Credit Corp. v. Oppegard's, Inc.,* 2005 ND 141, ¶ 16, 701 N.W.2d 891; *City of Bismarck v. Fettig,* 1999 ND 193, ¶ 15, 601 N.W.2d 247.

[¶ 15] Section 41–03–10(4), N.D.C.C. [U.C.C. § 3–110], provides, in pertinent part:

If an instrument is payable to two or more persons alternatively, it is payable to any of them and may be negotiated, discharged, or enforced by any or all of them in possession of the instrument. If an instrument is payable to two or more persons not alternatively, it is payable to all of them and may be negotiated, discharged, or enforced only by all of them.

Center Mutual does not contend that the check was payable to Grieme, NDHFA, and Norwest alternatively, and therefore under the statute it could only be negotiated, discharged, or enforced by all of them.

■ [¶ 16] This Court has not previously addressed a drawer's liability to a non-alternative joint payee whose endorsement was forged on an instrument. In analogous circumstances, courts in other jurisdictions, applying the current version of U.C.C. § 3–110(4) and the substantively identical pre–1990 version [prior U.C.C. § 3–116] of the statute, have held that the drawer is not discharged on the instrument and is liable to the joint payee. *See*

*Crystaplex Plastics, Ltd. v. Redevelopment Agency,* 77 Cal.App.4th 990, 92 Cal.Rptr.2d 197, 202–04 (2000); *General Motors Acceptance Corp. v. Abington Cas. Ins. Co.,* 413 Mass. 583, 602 N.E.2d 1085, 1087–89 (1992) ["*GMAC*"]; *Quintana v. Allstate Ins. Co.,* 378 N.W.2d 40, 43–44 (Minn.Ct.App.1985); *Lee v. Skidmore,* 49 Ohio App.2d 347, 361 N.E.2d 499, 500–01 (1976); *see also* 5A Ronald A. Anderson, *Uniform Commercial Code* § 3–116:24 (3d ed.1994) (joint action by all payees "is required to discharge the paper"). The purpose of the statute is "to protect the interests of all parties entitled to payment under the instrument." *Quintana,* at 43. As noted by the court in *GMAC*:

> If one of the several joint payees can receive payment without authority from the others, there is no assurance that the consideration necessary to extinguish the underlying liability of the drawer will reach the other payees. On the other hand, if payment must be made to all or with the authority of all, there is an obvious tendency to force the payees together, to encourage compromise of their conflicting claims, and to put them on notice in such fashion as to permit them to protect their own interests. The latter rule tends to insure the discharge of the underlying obligation of the drawer to all parties and to protect the interest of the various payees in the proceeds—the two primary purposes prompting the use of joint-payee instruments.

*GMAC,* at 1088 n. 4 (quoting Note, *Discharge of Joint–Payees Instruments,* 1 Stan.L.Rev. 730, 738 (1949)).

■ [¶ 17] Under the Uniform Commercial Code, "an unauthorized signature is ineffective except as the signature of the unauthorized signer." N.D.C.C. § 41–03–40(1) [U.C.C. § 3–403]. Therefore, "since the forgery of the payee's name does not

have any effect as a signature, it does not pass title to the paper or release the obligor on the paper from the obligation to pay the payee." 6 Ronald A. Anderson, *Uniform Commercial Code* § 3–404:34 (3d ed.1998); *see also Morris v. Ohio Cas. Ins. Co.,* 35 Ohio St.3d 45, 517 N.E.2d 904, 909 (1988); 6A Anderson, § 3–419:224 (3d ed.1998).

[¶ 18] We find the reasoning of the courts in *GMAC* and *Crystaplex* persuasive. In *GMAC,* Abington Casualty issued an insurance policy on a vehicle owned by Robert Azevedo. GMAC held a security interest in the vehicle and was a loss payee under the insurance policy. The vehicle was damaged, and Abington issued a check payable jointly to Azevedo and GMAC. Azevedo presented the check for payment without GMAC's endorsement, and the drawee bank paid the check. GMAC then sued Abington as the drawer of the check to recover the insurance proceeds.

[¶ 19] Applying the pre–1990 version of the Uniform Commercial Code, the court concluded that Abington's obligation on the instrument to GMAC had not been discharged and that Abington remained liable to GMAC as a payee on the instrument:

> In this case, the drawee bank accepted the check, and payment was made to a payee. Ordinarily, an underlying debt is discharged when the check is " 'drawn on an account with sufficient funds to cover [it] at a solvent bank' and is delivered to the payee." *First Nat'l Ins. Co. v. Commonwealth,* 391 Mass. 321, 326–327, 461 N.E.2d 789 (1984), quoting *Terry v. Kemper Ins. Co.,* 390 Mass. 450, 455, 456 N.E.2d 465 (1983). Even delivery of a check to the payee's authorized agent who then cashes it, discharges the drawer's liability. However, in this case, where there are copayees who are not in an agency relationship, a negotia-

ble instrument cannot be discharged by the actions of only one payee. Section 3–116(b) expressly prohibits the discharge of an instrument except by *all* the payees. "[T]he rights of one [payee] are not discharged without his consent by the act of the other." Uniform laws comment to G.L. c. 106, § 3–116 at 581 (Law.Co-op.1984). Without this rule, there would be no assurance that all the joint payees would receive payment and that the drawer's underlying obligation would be fully discharged.

Prior to the adoption of § 3–116, the common law rule that any joint obligee has power to discharge the promisor by receipt of the promised performance, Restatement of Contracts § 130(a) (1932), had created particular incongruities when applied to negotiable instruments. The unpaid copayee could not collect from the *drawer* because the instrument was deemed discharged; on the other hand, the unpaid copayee could sue the *drawee* on a conversion of funds theory. Section 3–116 settles the issue by requiring the endorsements of every joint payee before an instrument can be discharged. The Restatement of Contracts (Second) expressly recognizes this exception to the common law rule.

Prohibiting the discharge of a check without all the necessary endorsements also accords with § 3–603, which discharges a party's liability on an instrument only if payment or satisfaction is made to a holder. Lacking GMAC's endorsement, Azevedo could not have taken the check by negotiation and thereby become a holder. § 3–202. Without payment to a holder, the liabilities of the parties to the check are not discharged. § 3–603. This holding also comports with § 3–419(1)(c), which provides that payment over a forged endorsement results in liability for conversion rather than acceptance and discharge. Further, to hold that an instrument is discharged when payment is made to one copayee without the endorsement of the other would effectively convert a "payable to A *and* B" instrument into one "payable to A *or* B." Thus, to protect the rights of all joint payees as well as the integrity of the commercial paper itself, we hold that payment of a check to one copayee without the endorsement of the other copayee does not discharge the drawer of either his liability on the instrument or the underlying obligation.

*GMAC,* 602 N.E.2d at 1087–88 (citations and footnotes omitted).

[¶ 20] In *Crystaplex,* the court applied the revised version of the Uniform Commercial Code and relied upon *GMAC* in holding that payment of a check without the valid endorsements of all payees did not discharge the drawer's liability, and the payee could recover on the instrument from the drawer. In *Crystaplex,* the Redevelopment Agency had contracted for construction of a sports park, including a hockey rink. The general contractor employed a subcontractor, and that subcontractor contracted with Crystaplex to supply and install the hockey rink. The Agency issued a check payable jointly to the subcontractor and Crystaplex, and the subcontractor cashed the check without obtaining Crystaplex's endorsement. Crystaplex sued the Agency as drawer on the check. The court held that payment to a person who is not entitled to enforce the instrument does not discharge the drawer's liability on the instrument to the payee:

The Uniform Commercial Code Comment to California Uniform Commercial Code section 3–310 discusses subdivision (b)(4) as follows: "There was uncertainty concerning the applicability of former Section 3–802 to the case in which the

check given for the obligation was stolen from the payee, the payee's signature was forged, and the forger obtained payment. The last sentence of subsection (b)(4) addresses this issue. If the payor bank pays a holder, the drawer is discharged on the underlying obligation because the check was paid. Subsection (b)(1). *If the payor bank pays a person not entitled to enforce the instrument, as in the hypothetical case, the suspension of the underlying obligation continues because the check has not been paid.* Section 3–602(a). *The payee's cause of action is against the depository bank or payor bank in conversion under Section 3–420 or against the drawer under Section 3–309."* (Italics added.) This is precisely the situation here, because the payee who negotiated the check was not entitled to enforce the instrument. The joint payees, acting together, were the persons who could enforce the instrument: "If an instrument is payable to two or more persons not alternatively, it is payable to all of them and may be negotiated, discharged, or enforced only by all of them." (§ 3110, subd. (d); see also, § 3301.)

*"The creditor can proceed under Section 3–309 to enforce the obligation of the debtor, as drawer, to pay the check."* (Italics added.) It is therefore apparent that the payee may maintain an action against the drawer, leaving the drawer to cross-complain against any or all of the other banks involved in the check-cashing process.

*Crystaplex,* 92 Cal.Rptr.2d at 202–03. As in *GMAC,* the court equated payment of an instrument without a necessary endorsement to a lost or stolen instrument, and held that the Agency, as the drawer, was liable to Crystaplex on the instrument. *Crystaplex,* at 202–04.

[¶ 21] We reach the same result here. The forged endorsement of NDHFA on the check did not operate as a signature of NDHFA and therefore, under N.D.C.C. § 41–03–10(4), did not discharge Center Mutual's obligations as drawer of the instrument. Applying the rationale of *GMAC* and *Crystaplex,* we conclude Center Mutual is liable to NDHFA on the instrument.

■ [¶ 22] This appears to be the logical and intended result under the statutory scheme of the Uniform Commercial Code. Center Mutual had a right to demand reimbursement for the improperly paid check from Bremer Bank when the forged endorsement was brought to Center Mutual's attention by NDHFA. *See* N.D.C.C. § 41–04–32(1) (a bank may charge an item which is "properly payable" against the account of its customer); 2 James J. White & Robert S. Summers, *Uniform Commercial Code* § 18–3 (4th ed.1995) (a check containing a forged endorsement is not "properly payable" under U.C.C. § 4–401, and the drawer has a right to reimbursement from its bank for payment of a check bearing a forged endorsement); *see also Guardian Life Ins. Co. v. Weisman,* 223 F.3d 229, 232 (3d Cir.2000); *Pamar Enters., Inc. v. Huntington Banks,* 228 Mich.App. 727, 580 N.W.2d 11, 16 (1998); *Pavex, Inc. v. York Fed. Sav. and Loan Ass'n,* 716 A.2d 640, 644 (Pa.Super.Ct.1998). Thus, when notified of the forged endorsement, Center Mutual could have demanded reimbursement of the amount of the check to its account from Bremer Bank. Because each bank in the collection chain warrants that all signatures on the item are authentic and authorized, *see* N.D.C.C. § 41–04–19(1)(b) [U.C.C. § 4–207], Bremer Bank as the payor bank and each collecting bank in the chain could have sought reimbursement up through the chain until reaching

the depositary bank, Wells Fargo Bank of Tempe. This process for ultimately imposing the loss upon the forger or the depositary bank that dealt directly with the forger has been explained:

> As part of an attempt to establish uniform rules governing the relationship between banks and their customers, the UCC allocates the losses caused by forged endorsements on negotiable instruments based on the relative responsibilities of the parties to a transaction. Generally, a drawee bank is not entitled to debit the drawer's account when the bank pays over a forged endorsement, because an 'unauthorized signature is wholly inoperative as that of the person whose name is signed.' N.J.Stat.Ann § 12A:3–404(1) (West 1962). However, a drawee bank which has paid over a forged endorsement can shift the loss 'upstream' to previous endorsers, e.g., collecting banks, by way of an action for breach of warranty of good title. Ultimately, the 'loss falls on the party who took the check from the forger, or on the forger himself.' Thus, the drawer of the check can usually avoid liability on a check with a forged endorsement simply by showing the unauthorized endorsement and the depositary or initial collecting bank will likely suffer the loss.

*Pavex*, at 644 (quoting *McAdam v. Dean Witter Reynolds, Inc.*, 896 F.2d 750, 759 (3d Cir.1990)). The Uniform Commercial Code envisions this remedy, rather than requiring the innocent loss payee whose endorsement was forged to directly sue the forger or the depositary bank.

[¶ 23] We conclude the district court did not err in determining that Center Mutual was liable on the instrument to NDHFA.

### IV

[¶ 24] Center Mutual alleges there is a genuine issue of material fact concerning the amount of damages to which NDHFA is entitled. Center Mutual claims that NDHFA ultimately made repairs to the Griemes' house for an amount less than $4,378, the amount of the check, and is only entitled to that lesser amount as damages under N.D.C.C. § 32–03–09.1.

[¶ 25] Section 32–03–09.1, N.D.C.C., governs the measure of damages for injury to property caused by the breach of an obligation not arising from a contract. Center Mutual's liability to NDHFA is not premised upon injury to property, but is based upon the instrument itself. Under *GMAC* and *Crystaplex*, the drawer remains liable upon the instrument to a payee whose endorsement is missing or forged. *See Crystaplex*, 92 Cal.Rptr.2d at 202–04; *GMAC*, 602 N.E.2d at 1088–89. A negotiable instrument, including a check, is an unconditional promise to pay a fixed amount of money. *See* N.D.C.C. § 41–03–04(1) [U.C.C. § 3–104]. Center Mutual adjusted the loss and issued its unconditional promise to pay $4,378 to the named joint payees. Furthermore, Center Mutual, as the drawer of a check paid over a forged endorsement, had the right to have its account recredited for the full amount of the wrongfully paid check. *See Guardian Life*, 223 F.3d at 232; *Pamar Enters.*, 580 N.W.2d at 16. Under these circumstances, the proper measure of damages was the face amount of the check.

### V

[¶ 26] We have considered the remaining issues and arguments raised by the parties and find they are either without merit or are unnecessary to our decision. The judgment is affirmed.

[¶ 27] DALE V. SANDSTROM, Acting C.J., JAMES M. BEKKEN, D.J., CAROL RONNING KAPSNER, and DANIEL J. CROTHERS, JJ., concur.

[¶ 28] The Honorable JAMES M. BEKKEN, D.J., sitting in place of VANDE WALLE, C.J., disqualified.