GAILEN R. HOEL, Indiv. and as Adm'r of the Estate of Vivian K. Hoel, Deceased, Plaintiff-Appellant, *v.* CRUM AND FORSTER INSURANCE COMPANY *et al.*, Defendants-Appellees.

Second District   No. 76-278

Opinion filed August 1, 1977.—Rehearing denied September 16, 1977.

Collis M. Hennelly, of Davitt, Greene, Hennelly & Bowman, of Rockford, for appellant.

Kenneth W. Traum, of Thomas, Konstantacos & Traum, of Rockford, for appellees.

Mr. JUSTICE SEIDENFELD delivered the opinion of the court:

Vivian K. Hoel, deceased, was a passenger in an automobile driven by Leea Case, which was involved in a collision on December 19, 1973, with an uninsured motorist, Della Smith. Mrs. Hoel and her unborn child died as a result of injuries received in the accident. The plaintiff, Gailen R. Hoel, individually and as administrator of his wife's estate filed a complaint against the defendants Crum and Forster Insurance Company and International Insurance Company under an insurance policy issued by the defendants which named his wife and himself as insureds. Defendants answered and subsequently moved for summary judgment based on the pleadings, affidavits and the discovery deposition of Gailen R. Hoel. The trial court entered summary judgment for the defendants from which plaintiff appeals.

Count I of the complaint sought $10,000 under the uninsured motorist provision of the policy issued to the Hoels on behalf of the deceased wife and $10,000 on behalf of the unborn child. Count II was a claim for $50,000 coverage under the excess personal injury protection clause for the death of the wife and an additional $50,000 on behalf of the child claimed to be an additional insured. Count III sought damages for vexatious refusal to pay.

In a motion for summary judgment defendants alleged that the 4½-month-old fetus is not an "insured" under the policy and as a result alleged that no recovery was due for its death. Defendants further alleged that William A. Siivonen, the owner of the car in which Vivian Hoel was the passenger, was insured with the American Mutual Insurance Companies (hereinafter American) and that plaintiff's claim was barred because he entered into a settlement with Leea M. Case, the driver of the Siivonen car, without consent and in violation of the subrogation, trust agreement

and cooperation clauses of the defendants' policy. Plaintiff was alleged to have received the sum of $7,000 in settlement of the uninsured motorist claim in consideration for which American took a trust agreement and release in full satisfaction of all claims. It is also alleged that plaintiff individually and on behalf of the estate entered into a covenant not to sue which recited the consideration of $10 in settlement of the bodily injury claim of the estate, and that American paid the sum of $1125 under the terms and provisions of the medical payments coverage of its policy of insurance. The defendants finally alleged that they had paid out to the plaintiff $2803.87 in the form of wage continuation payments prior to the time they learned of the settlement and that they were entitled to the repayment of that sum.

Plaintiff answered the motion for summary judgment and attached supporting affidavits. Plaintiff alleged that American's insurance had $10,000/$20,000 limits and that American had exhausted that coverage by paying a total of $20,000 to Leea Case, Gailen R. Hoel and Patricia Zimmerman, another passenger in the car. Plaintiff also alleged that the medical payments by American were for burial expenses for which no claim was being made against the defendants, and the other payments made by American were for additional loss and not a duplication of the payment made by defendants to the plaintiff. Further, it is alleged that the survivor's benefits paid by defendants were unrelated to uninsured motorist coverage and not a duplication of any other payment. Plaintiff also alleged that the exposure and liability under the excess personal injury protection clause is $50,000/$100,000 based upon no-fault for which a premium was paid separate and apart from the uninsured motorist coverage and the usual liability coverage. The answer further stated that plaintiff cooperated with defendants by pursuing the uninsured motorist coverage against American as the primary carrier.

Portions of the defendants' office files and correspondence between plaintiff's attorney and defendants were attached to the answer to the motion for summary judgment. In a letter dated January 16, 1974, plaintiff's counsel notified defendants that he represented the plaintiff, stated that he was seeking recovery against American, insurer of the automobile involved in the accident and was also seeking recovery against defendants. Defendants responded in a letter dated January 22, 1974, stating that they did not have any uninsured motorist liability on the policy because American had primary liability. The letter also noted that excess personal injury protection under coverage "L" would be applicable in this instance.

Defendants referred to subrogation rights as follows: "In the event any payment is made by this company to our insured we would have his right

of subrogation and will process against the primary carrier." Thereafter defendants sent a letter to American "for the purpose of putting you * * * on notice of our subrogation rights." Plaintiff's counsel replied to defendants' letter on March 28, 1974. Counsel stated that he interpreted defendants' letter to say that no payment was due under either uninsured motorist coverage or basic personal injury protection. The letter noted that defendants had admitted liability under the excess personal injury protection coverage "L" and contended that there would be no duplication of payment under that coverage and thus suggested that there would be no subrogation difficulty. The letter finally suggested that defendants tender the limits of the policy to plaintiff and then proceed with the claim that plaintiff might have had against other parties.

On April 17, 1974, defendants began to make payments to plaintiff although it is not clear under which provision of the policy the payments were made. It further appeared that American telephoned defendants notifying them of the settlement. Defendants requested details and American provided the details in a letter dated December 2, 1974. American indicated in that letter that it desired to settle defendants' subrogation claim. Defendants stopped monthly payments in September 1974 and plaintiff's counsel wrote to defendants on October 10, 1974, seeking an explanation. In a response dated October 25, 1974, defendants requested that plaintiff return the $2803.87 and stated:

> "Reviewing your correspondence indicates you were having difficulty in understanding the fact that the only portion of our policy applicable to our insured in this instance is under Coverage L, Paragraph D, the survivor's benefit, which provides for maximum of 260 weeks after date of death of the spouse figured on 85 percent of the amount earned as stipulated. The limit of $50,000 gives reference to the total amount payable under Coverage L."

In two letters following the settlement, one dated December 2, 1974, and the other dated January 24, 1975, American noted that it was amenable to settling defendants' "subrogation lien."

In interoffice correspondence dated January 8, 1974, a reserve of $29,000 was established. In a "Casualty Large Claim Summary" dated January 23, 1974, the following legend appears:

> "4. RECOMMENDATIONS FOR HANDLING:
> Named insured is represented by an attorney. Driver at fault deceased was uninsured. Insured['s] attorney is proceeding against uninsured motorist carrier and is looking to us for survivor's benefit and uninsured motorist coverage. Uninsured motorist coverage not stackable in Illinois. Upon

verification of deceaseds wages will pay death benefits and subrogate. We are paying under the benefit of no fault and not under survivor's.

5. REMARKS: the U M Coverage.

We have analyzed coverage and are advising insured's attorney.

6. COVERAGE: (If coverage question exists—explain in detail) (If coverage in order—so indicate).

We have verified that primary carrier has same limits with regard to UM coverage. If payment is made under survivor's benefit, we will subrogate against primary carrier."

On July 25, 1974, the claim supervisor wrote to defendants' assistant secretary stating that the Freeport Branch Office was making payments in accordance with the provisions

"* * * of extended No-Fault Benefits applicable in this case. The husband has retained an attorney and a Notice of Subrogation was sent to the American Mutual Insurance Company advising them that any payments made under the extended No-Fault Benefits would be recoverable against the liability coverage afforded the Sinoven [sic] vehicle. The driver of the Sinoven [sic] automobile was Leea Case. The relationship between the two is father/daughter. The vehicle that caused this accident was operated by Della Smith and was on the wrong side of the road at the time the accident occurred. From the factual situation, it would appear the driver of the Smith vehicle is the one responsible in this case. The Smith vehicle is uninsured."

■■ We first consider defendants' contention that the covenant not to sue and the release and trust agreement executed by the plaintiff bars recovery under the defendants' insurance policy. Defendants' policy contained the usual clause subrogating the company to the rights of the person to or for whom payments are made and providing that such person shall do nothing after loss to prejudice the rights. The policy also contained the usual provision that "No action may lie against the Company unless, as a condition precedent thereto, there has been full compliance with all the terms of this coverage." Thus, when defendants paid on plaintiff's claim they became subrogated to the rights of the plaintiff as against any third party which would be primarily liable. (*Shaw v. Close*, 92 Ill. App. 2d 1, 3 (1968).) Further, if an insured settles with a third party who is primarily responsible for the loss and releases him from liability such release destroys the insured's right to subrogation and may be interposed as a complete defense to the action on the policy. (*Tuthill v. State Farm Insurance Co.*, 19 Ill. App. 3d 491, 498-99 (1974).) The purpose

and objective of the cooperation clause "is to prevent collusion * * * as well as to make possible the insurer's investigation" and "the burden of proof is upon the insurer to prove what in law constitutes the breach." (*M.F.A. Mutual Insurance Co. v. Cheek*, 66 Ill. 2d 492, 496 (1977).) However, the rule has been established:

> "[U]nless the alleged breach of the cooperation clause substantially prejudices the insurer in defending the primary action, it is not a defense under this contract. This is the test to be employed in our courts in cases where the issue is a breach of the cooperation clause. * * *
>
> * * *
>
> Proof of substantial prejudice requires an insurer to demonstrate that it was actually hampered in its defense by the violation of the cooperation clause." *M.F.A. Mutual Insurance Co. v. Cheek*, 66 Ill. 2d 492, 499-500.

Whether the defendants were actually hampered in their defense or substantially prejudiced by the *settlement entered into between plaintiff and American* are questions of fact which the summary judgment procedure is not intended to resolve. The defendant would, of course, be substantially prejudiced if they could not be subrogated to a possible recovery from a third party for payments which they were required to make to their insured under the terms of their policy. The giving of the covenant, not to sue the driver and the owner of the car in which the insured was a passenger would substantially prejudice defendants if it is proved that Leea Case is a party responsible for the accident. The defendants would be subrogated to any recovery against her in that event, presumably payable out of the insurance policy of American. However, the pleadings, affidavits and depositions do not demonstrate prejudice as a matter of law. The defendants' investigative file shows the conclusion that "oncoming vehicles passing semi, collision occurred in insured's lane." Other memoranda from defendants' files which appear in the record indicate that the defendants had investigated the case and had concluded that "the driver of the Smith vehicle is the one responsible for the accident" and "Driver at fault deceased was uninsured" and "Wrongdoers auto uninsured."[1]

■■ We conclude that these circumstances raise substantial questions of fact relating to whether there were any subrogation rights to be substantially prejudiced. The defendants, who have the burden of

---

[1] There is also a copy of the judgment in the record showing that in a suit by Patricia Zimmerman, another passenger in the insured's car, against the driver Leea Case as well as the driver and owner of the truck which was being passed by the Smith vehicle there was a directed verdict in favor of the defendants at the close of the evidence for the plaintiff. It is not argued that this is res judicata of the issue of liability since there is no showing of identity of parties, subject matter or cause of action.

showing substantial prejudice by a claimed failure of the insured to cooperate and preserve subrogation rights, should be put to that burden on a trial of the factual issues.

The mere recital of plaintiff's settlement with American together with copies of the release and trust agreement does not demonstrate that defendants' subrogation rights were substantially prejudiced as a matter of law. Plaintiff alleges in his affidavit that American had exhausted its limit of $20,000 in coverage on the accident by making payments on the claims of the other occupants of the auto in addition to making payment on plaintiff's claim. Although it is conceivable that defendants could have required American to pay the full $10,000 limit for an individual injury based on Mrs. Hoel's death, it is also possible that $7000 was the maximum to be obtained from American. Again, the burden is on defendants to demonstrate that a subrogation right existed and that plaintiff substantially prejudiced that right. *M.F.A. Mutual Insurance Co. v. Cheek,* 66 Ill. 2d 492, 500 (1977).

Even if the court were to assume prejudice of defendants' subrogation rights, however, there are circumstances which would suggest defendants may have waived the policy condition and have permitted plaintiff to proceed unilaterally against American. Plaintiff's counsel notified defendants of his intention to seek uninsured motorist benefits from American. In reply defendants denied any liability for uninsured motorist coverage and indicated that American was solely liable in this respect as the primary carrier. In the same letter, defendants informed plaintiff's counsel that amounts payable under their policy would be reduced by any amount received from American and defendants represented they "would process against the primary carrier."

Defendants' letter amounts to an invitation for plaintiff to unilaterally pursue his claim against American. Defendants, having identified American as the liable party, had no right to expect that plaintiff would refrain from prosecuting his claim against that party. (*Cf. Barbour v. Slaughter,* 36 Ill. App. 3d 857, 863 (1976); but see *Tuthill v. State Farm Insurance Co.,* 19 Ill. App. 3d 491, 499 (1974).) As stated in *Tarzian v. West Bend Mutual Fire Insurance Co.,* 74 Ill. App. 2d 314, 325-26 (1966):

> "The defendants permitted the plaintiffs to prosecute and control this litigation and it was only when a settlement not to their satisfaction was arrived at that they took the position that their contractual rights were affected."

See also *Baron v. Coronet Insurance Co.,* 47 Ill. App. 3d 95, 99 (1977); *Vasilakis v. Safeway Insurance Co.,* 46 Ill. App. 3d 369, 374 (1977).

Moreover, the letter implies that defendants would take action to secure their subrogation interests while in fact that did nothing which would have the legal effect of protecting those interests. In the letter,

defendants represented they "would process against the primary carrier." By this statement, defendants apparently contemplated notifying American of their subrogation interest. In other jurisdictions, American would be subject to defendants' subrogation claim despite plaintiff's unilateral settlement because in those jurisdictions a release or settlement taken with notice of a subrogation right will not bar an action to enforce that right. (See, *e.g., Aetna Casualty & Surety Co. v. Associates Transports, Inc.,* 512 P.2d 137, 141-42 (Okla. 1973). See also 44 Am. Jur. 2d *Insurance* §1837, at 765 (1969); Annot., 92 A.L.R.2d 102, 124-37 (1963).) Illinois, however, has specifically declined to adopt this rule and defendants' right could not be secured by notice. *Inter Insurance Exchange of Chicago Motor Club v. Andersen,* 331 Ill. App. 250, 254-58 (1947); *St. Louis Fire & Marine Insurance Co. v. Garnier,* 24 Ill. App. 2d 408, 415 (1960).

In any event, the documents appended to the affidavits show that defendants sent American a letter which stated, "This letter is for the purpose of putting you on notice of our subrogation rights." The record contains nothing which indicates that defendants did anything further to secure the interest. Despite the fact that defendants had no enforceable subrogation interest after plaintiff executed the unilateral settlement, American nonetheless made two offers to pay defendants' claim. In one letter it termed defendants' claim a "subrogation lien."

It is manifestly evident from this correspondence that defendants promulgated the notion that its subrogation rights were secure after it gave American notice of those rights. American obviously adopted the notion as evidenced by its willingness to pay defendants worthless claim after it gained a release. Plaintiff, of course, is incorrect in claiming as he did in his answer to motion for summary judgment that defendants may still pursue a subrogation claim. On the other hand, defendants' statements and actions may have caused plaintiff to reasonably conclude that such was the case. (*Cf. McMahon v. Coronet Insurance Co.,* 6 Ill. App. 3d 704, 709 (1972).) This particular combination of events presents questions of fact and thus requires that the waiver issue be resolved on remand. *Cf. Baron v. Coronet Insurance Co.,* 47 Ill. App. 3d 95, 100 (1977).

The defendants have argued that the plaintiff did not plead a waiver and cannot raise the issue here for the first time. We do not agree. The plaintiff's complaint contained the allegation that he complied with all conditions of the policy, and defendants' answer contained only a general denial. Supreme Court Rule 133(c) provides:

> "(c) *Condition Precedent.* In pleading the performance of a condition precedent in a contract, it is sufficient to allege generally that the party performed all the conditions on his part; if the

allegation be denied, the facts must be alleged in connection with the denial showing wherein there was a failure to perform." (Ill. Rev. Stat. 1975, ch. 110A, par. 133(c).)

Moreover, the court has a duty, in ruling on a motion for summary judgment, to consider the entire record to determine whether there is a genuine issue as to a material fact. *Peltz v. Chicago Transit Authority*, 31 Ill. App. 3d 948, 949 (1975).

It additionally appears that the defendants may themselves have breached a portion of the insurance contract inuring to the benefit of the insured. If the insurer is shown to have breached portions of an insurance contract inuring to the benefit of the insured he cannot insist that the insured be bound by the provisions which inure to the benefit of the insurer. (*Dinn Oil Co. v. Hanover Insurance Co.*, 87 Ill. App. 2d 206, 212 (1967).) Defendants in their letter dated October 25, 1974, denied any liability on Coverage K stating that they considered the only portion of the policy applicable to the insured "is under Coverage L, Paragraph D, the survivor's benefit, which provides for maximum of 260 weeks after date of death of the spouse figured on 85 percent of the amount earned as stipulated." It was on this basis that defendants calculated the maximum liability under the policy at approximately $19,000. In fact, from the language of the policy it appears that defendants were liable under both Coverage K and Coverage L. Payments were first to be made under Coverage K for the first year after the death of Mrs. Hoel and payments thereafter for 260 weeks were to be made under Coverage L. Defendants' liability on both Coverage K and L would amount to approximately $23,000. It thus appears that by only admitting liability under Coverage L defendants may have breached their contract with plaintiff and denied him payments due under Coverage K and as a result of this breach defendants should not be allowed to claim the policy provisions which inure to their benefit. In any event, the pleadings and affidavits suggest that a factual matter remains which should be resolved at a hearing.

■■ We agree, however, with the disposition made by the trial court as to several other legal questions raised. First, we conclude that the trial court properly dismissed count III of the complaint which sought recovery on the basis that defendants' failure to pay plaintiff's claim constituted a vexatious and unreasonable refusal to pay under section 155 of the Insurance Code (Ill. Rev. Stat. 1975, ch. 73, par. 767). The issues in this case are complex and recovery under the quoted provisions of the statute is therefore not appropriate. See *Glidden v. Farmers Automobile Insurance Association*, 57 Ill. 2d 330, 339 (1974).

■■ We also agree with the trial court's finding that plaintiff has no right to receive proceeds under the defendants' uninsured motorist coverage to compensate for the loss of the approximately 4½-month-old

fetus. The defendants did not have primary liability on the uninsured motorist coverage. In addition the plaintiff has not made the required claim that the 4½-month-old fetus was viable. (See *Chrisafogeorgis v. Brandenberg*, 55 Ill. 2d 368, 374 (1973).) The case of *Labree v. Major*, R.I. 657, 674, 306 A.2d 808, 818 (1973). cited by plaintiff is not authority for extending the *Chrisafogeorgis* decision to nonviable fetuses. *Labree* involved recovery for prenatal injury sustained in an automobile collision where the child was subsequently born alive after the collision. (See also similar case law in Illinois: *Daley v. Meier*, 33 Ill. App. 2d 218 (1961); *Renslow v. Mennonite Hospital*, 40 Ill. App. 3d 234 (1976), *appeal allowed*, ___ Ill. 2d ___.) However, in *Chrisafogeorgis* and in the present case the fetus was not born alive.

We also agree with the trial court that the words "injured person" as used in the context of defendants' policy, Coverage K and L, do not include a nonviable fetus.

We also consider the ruling of the trial court that plaintiff may not "stack" the uninsured motorist liability of American with the uninsured motorist liability of defendants. The defendants' policy is a single one insuring plaintiff and contains an excess "other insurance" provision under its uninsured motorist coverage. Therefore, plaintiff may not "stack" that coverage with the primary coverage provided by American. (See *Winkler v. State Farm Mutual Automobile Insurance Co.*, 35 Ill. App. 3d 493, 495-96 (1976). See also *Putnam v. New Amsterdam Casualty Co.*, 48 Ill. 2d 71, 84 (1970).) *Glidden v. Farmers Automobile Insurance Association*, 57 Ill. 2d 330 (1974), cited by plaintiff in support of his argument that the provisions should be stacked, does not apply on its facts. In *Glidden* the insured purchased three distinct policies from a single insurer, for three separate automobiles and paid three separate premiums. The supreme court held that the other insurance clause had no meaningful purpose when applied to coverage issued by one company to the insured in separate policies. Here the insured had purchased and paid a premium only on one policy; and the other insurance clause had reference to a policy such as the one issued by American.

■■ Plaintiff has also argued that defendants improperly claim a set-off of the payment made by American for uninsured motorist coverage against their liability under personal injury protection and excess protection coverages of their policy. In the event that the defendants' policy is found on remand to be in effect, defendants are not entitled to the set-off unless they can show a duplication of payment.

"Setoffs are to apply only where necessary to prevent double exposure * * *." (*Glidden v. Farmers Automobile Insurance Association*, 57 Ill. 2d 330, 338 (1974). See also *Melson v. Illinois National Insurance Co.*, 1 Ill. App. 3d 1025, 1027 (1971).) We cannot determine from the record before

us whether recovery, if any, under coverages K and L would duplicate damages which have already been compensated by the uninsured motorist recovery.

We affirm the order of the trial court to the extent that it dismissed claims based on the injury to the fetus (in counts I, II) and dismissed the claim for damages under count III. The judgment as to the remaining claims in counts I and II is reversed and the cause remanded with directions to vacate the summary judgment and to proceed to trial on the merits consistent with this opinion.

Affirmed in part, reversed in part and remanded with directions.

GUILD and WOODWARD, JJ., concur.