2006 ND 141

**FARMERS INSURANCE EXCHANGE,
Truck Insurance Exchange, Fire Insurance Exchange, Mid–Century Insurance Company, and Farmers New World Life Insurance Company,
Plaintiffs and Appellants**

v.

**Allen SCHIRADO, Defendant
and Appellee.**

No. 20050221.

Supreme Court of North Dakota.

June 29, 2006.

Jerry W. Evenson, Zuger Kirmis & Smith, Bismarck, N.D., for plaintiffs and appellants.

Charles "Casey" L. Chapman, Chapman and Chapman, Bismarck, N.D., for defendant and appellee.

CROTHERS, Justice.

[¶ 1] Farmers Insurance Exchange, Truck Insurance Exchange, Fire Insurance Exchange, Mid–Century Insurance Company, and Farmers New World Life Insurance Company (collectively "Farmers") appealed from a summary judgment dismissing their action against Allen Schirado for breach of contract, misappropriation of trade secrets, tortious interference with contract, conversion, unjust enrichment, and breach of fiduciary duty and awarding Schirado damages on his counterclaim. We reverse and remand, concluding there are genuine issues of material fact which preclude entry of summary judgment.

I

[¶ 2] In 1988, Farmers and Schirado entered into an "Agent Appointment Agreement." Under terms of the agreement, Schirado, as an independent contractor, agreed to act as an agent for Farmers to sell the various lines of insurance provided by Farmers. The agreement re-

quired Schirado to submit to Farmers all requests or applications for insurance for the classes underwritten by Farmers and eligible in accordance with Farmers' rules and manuals. The agreement further provided that all manuals, lists, and records, including information pertaining to policyholders, were the confidential property of Farmers and were to be returned to Farmers upon termination of the agreement. The agreement also contained provisions governing termination of the agreement by Farmers or Schirado.

[¶ 3] Schirado claims that on December 18, 2001, in compliance with a three-month notice provision in the agreement, he faxed a letter indicating his intent to resign effective March 31, 2002, to Betsy Nealon, Farmers' Executive Director for North Dakota and South Dakota. Nealon testified she never received the letter.

[¶ 4] In late March 2002, Schirado sent a letter to his clients notifying them he had terminated his contract with Farmers, stating:

> This was not an easy decision to make after representing the company for over 14 years. The reasons for this decision are varied, but deal with ethics and the treatment of my clients.

Schirado then explained he would be continuing as an independent insurance agent with a new agency, and stated:

> As you may have noted on the letterhead, my agency address and phone number are different. There is a clause in the Farmers contract which may allow them to take over my office and old phone number. I do not intend to allow that to happen without a fight but, like the man said, pray for the best but prepare for the worst.

Schirado concluded the letter by noting he would not be able to solicit the client on insurance matters for a period of one year, but "you on the other hand are free to contact whomever you desire." Farmers learned of Schirado's letter to his clients and, believing that the letter violated the terms of the parties' agreement, Nealon on March 28, 2002, faxed a letter to Schirado notifying him that Farmers was terminating the parties' agreement immediately.

[¶ 5] Under terms of the parties' agreement, Schirado was to be paid "Contract Value" payments upon termination of the agreement. Farmers was allowed to make Contract Value payments in installments. Schirado requested his Contract Value payments and Farmers sought return of all policyholder information and documents. There were disputes between the parties in attempting to resolve these matters. Schirado eventually received two Contract Value installment payments and he eventually transferred documents and records to Farmers. Farmers claims the documents were not in usable form and were returned too late to use in servicing existing policies.

[¶ 6] In August 2002, Farmers sued Schirado, alleging breach of contract, misappropriation of trade secrets, tortious interference with contract, conversion, unjust enrichment, and breach of fiduciary duty. Farmers claimed that, prior to termination of the parties' agreement, Schirado had sold policies to clients through other insurance companies which could have been provided by Farmers. Farmers also claimed that Schirado improperly attempted to induce clients to leave Farmers and take policies through Schirado with new companies, and that Schirado's retention of policyholder records and documents hampered Farmers servicing of existing policies and resulted in monetary damages to Farmers. Schirado answered, denying all of Farmers' claims, and filed a counterclaim seeking payment of the balance of his Contract Value payments.

[¶ 7] Schirado moved for summary judgment dismissing Farmers' complaint and awarding him judgment on his counterclaim. The district court determined there were no genuine issues of material fact on any of Farmers' claims and ordered summary judgment dismissing the complaint. The court also determined there were no genuine issues of material fact on Schirado's counterclaim and ordered judgment in favor of Schirado for $6,690 plus interest. Farmers appealed, contending the district court erred in determining there were no genuine issues of material fact on any of the claims raised in Farmers' complaint and in awarding the Contract Value payments to Schirado on his counterclaim.

## II

[¶ 8] "Summary judgment is a procedural device for the prompt resolution of a controversy on the merits without a trial if there are no genuine issues of material fact or inferences that can reasonably be drawn from undisputed facts, or if the only issues to be resolved are questions of law." *MBNA America Bank, N.A. v. Hart*, 2006 ND 33, ¶ 6, 710 N.W.2d 125. A party moving for summary judgment has the burden of showing there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Ballensky v. Flattum–Riemers*, 2006 ND 127, ¶ 7; *Anderson v. Selby*, 2005 ND 126, ¶ 7, 700 N.W.2d 696. In considering a motion for summary judgment, the court may examine the pleadings, depositions, admissions, affidavits, interrogatories, and inferences to be drawn therefrom to determine whether summary judgment is appropriate. *Anderson*, at ¶ 7.

[¶ 9] Whether the district court properly granted summary judgment is a question of law that we review de novo on the entire record. *MBNA*, 2006 ND 33, ¶ 6, 710 N.W.2d 125. On appeal, this Court decides whether the information available to the district court precluded the existence of a genuine issue of material fact and entitled the moving party to judgment as a matter of law. *Miller v. Diamond Res., Inc.*, 2005 ND 150, ¶ 8, 703 N.W.2d 316. "In determining whether summary judgment was appropriately granted, we view the evidence in the light most favorable to the party opposing the motion, and that party will be given the benefit of all favorable inferences that can reasonably be drawn from the evidence." *Id.*

## III

[¶ 10] The gravamen of Farmers' claims against Schirado is its allegation that Schirado's actions, both before and after termination, caused potential clients to purchase insurance with other companies and caused Farmers' existing clients to discontinue their coverage with Farmers. Farmers claims Schirado's wrongful conduct caused significant damages to Farmers in the form of lost premiums.

[¶ 11] In granting Schirado's motion for summary judgment, the district court focused exclusively upon the issue of causation. The court concluded that all of Farmers' claims were precluded because Farmers had failed to present direct evidence through testimony of individual policyholders explicitly stating that they left Farmers due to Schirado's conduct. The court stated its rationale in its order granting the motion for summary judgment:

To show Schirado is the cause of Farmers damages in the amount of lost business would require the actual policyholders to state they left Farmers due to Schirado. Through discovery, Farmers has not been able to show this type of

loss due to Schirado's actions. In this regard there are no questions of material fact and the Court grants Schirado's motion for summary judgment. . . .

[¶ 12] The district court's decision held Farmers to too high of an evidentiary standard. The trial court cited no cases or other supporting authority for its conclusion that causation could only be proven by direct testimony of actual policyholders stating that they left Farmers because of Schirado's actions. The determination whether certain conduct caused injury depends on the facts and circumstances of each case and generally is a question of fact for the trier of fact. *See Miller*, 2005 ND 150, ¶ 10, 703 N.W.2d 316; *Rued Ins., Inc. v. Blackburn, Nickels & Smith, Inc.*, 543 N.W.2d 770, 773 (N.D. 1996). Any issue may be proven by cir-·cumstantial evidence or by a combination of direct and circumstantial evidence. *Lovas v. St. Paul Ins. Cos.*, 240 N.W.2d 53, 61 (N.D.1976). Accordingly, a plaintiff may establish the elements of its claim by circumstantial evidence. *See Forster v. West Dakota Veterinary Clinic, Inc.*, 2004 ND 207, ¶ 20, 689 N.W.2d 366; *Heng v. Rotech Med. Corp.*, 2004 ND 204, ¶ 28, 688 N.W.2d 389. This Court expressly noted in *Heng*, at ¶ 28, that "circumstantial evidence may provide an inference of causation."

[¶ 13] This Court's holding in *Forster* in an analogous situation is particularly instructive. Forster was a veterinarian who claimed she was defamed when her prior employer, Brummond, told law enforcement officials and other veterinarians that Forster had poisoned Brummond's horse, had mistreated another horse, and had broken into Brummond's clinic and stolen drugs. Forster claimed Brummond's actions had affected her ability to secure other employment. On appeal, Brummond claimed she was entitled to

judgment as a matter of law because "Forster failed to produce any witnesses who testified they heard the statements and believed those statements to be defamatory." *Forster*, 2004 ND 207, ¶ 19, 689 N.W.2d 366. Concluding that direct evidence was not necessary, this Court held:

A jury has the right to consider circumstantial evidence as well as direct evidence. *Leake v. Hagert*, 175 N.W.2d 675, 687 (N.D.1970); *see also* NDJI Civil C–80.50 (1998) (stating "[a] fact can be proved by either direct evidence or circumstantial evidence, or by both"). Direct testimony of the recipient's understanding of the defamatory nature of a libel is not required if other evidence is sufficient to permit an inference of that understanding. *Wheeler v. Green*, 286 Or. 99, 593 P.2d 777, 782 (1979); *see also* 53 C.J.S. *Libel and Slander* § 165(b) (1987). Brummond did not dispute that she told various individuals Forster was involved in the break-ins, the horse poisoning, and the alleged abuse of Forster's horse. Forster presented evidence that some veterinarians expressed an interest in employing her before they communicated with Brummond. After communicating with Brummond, the veterinarian offices no longer had positions available for Forster. The jury was not required to believe testimony that the veterinarians did not hire Forster for reasons other than the concerns communicated to them by Brummond. We conclude the evidence in this case was sufficient for the jury to find that the "publication" element of defamation has been satisfied.

*Forster*, at ¶ 20.

[¶ 14] Similarly, there was circumstantial evidence presented in this case from which a trier of fact could infer Schirado's conduct caused economic damages to Farmers in the form of lost business.

Viewed in the light most favorable to Farmers, and giving Farmers the benefit of all favorable inferences reasonably drawn from the evidence, the evidence would allow a factfinder to draw the following inferences:

1) In the ten months prior to his attempt to terminate the agreement, Schirado increased the number of other companies for which he was authorized to write insurance from 11 to 20 and withheld that information from Farmers during discovery.

2) Shortly before terminating the agreement, Schirado wrote 19 separate policies with other companies which Farmers would have accepted if Schirado had first submitted the applications to Farmers as required by the parties' agreement.

3) Before leaving Farmers, Schirado sent a letter to existing clients stating he was leaving Farmers because of a dispute over ethical violations and mistreatment of clients by Farmers, suggesting Farmers was wrongfully taking over his old office and telephone number, and soliciting the Farmers' policyholders to follow him to his new agency.

4) Schirado refused to return up to 95% of the policyholder files and documentation which were necessary for Farmers to service policyholders. When Schirado finally turned over the materials at a much later date, the documents were randomly dumped in boxes and garbage bags, and were unusable.

5) A normal attrition rate of policyholders discontinuing their coverage when an agent leaves the insurer is 10%–15%; an "ugly termination" might result in a 25%–30% loss; it was estimated 50%–75% of Schirado's

customers left Farmers after Schirado left.

6) Some policyholders told Farmers' employees that they were dropping their coverage with Farmers because of problems which had been caused by Schirado's failure to return policyholder files in a timely manner.

 [¶ 15] Schirado challenges the basis and reliability of much of Farmers' evidence. Those are matters pertaining to credibility of witnesses and weight to be accorded the evidence, which are to be determined by the trier of fact. *See Akerlind v. Buck*, 2003 ND 169, ¶ 15, 671 N.W.2d 256. At the summary judgment stage, the evidence and inferences to be drawn therefrom must be viewed in the light most favorable to the party opposing summary judgment. Viewing the evidence in this case in that manner, a factfinder could infer that Schirado wrongfully diverted policyholders to companies other than Farmers, wrote a letter to all of his clients suggesting he was leaving because of unethical conduct by Farmers and inviting those clients to transfer their business to him at his new agency, and wrongfully withheld client files and documentation from Farmers, resulting in an inordinately high number of Schirado's clients leaving Farmers. This interpretation of the evidence would be sufficient to support an inference that Schirado's conduct caused potential clients to acquire policies with other companies and caused a significant number of Farmers' policyholders to leave Farmers. Direct evidence of causation is not required if other evidence is sufficient to permit an inference that the defendant's conduct caused the plaintiff's damages. *See Forster*, 2004 ND 207, ¶ 20, 689 N.W.2d 366. We therefore conclude genuine issues of material fact on the issue of causation preclude summary judgment.

## IV

[¶ 16] Schirado suggests that, even if there is a genuine issue of material fact on causation, summary judgment is still appropriate because Farmers failed to present direct evidence that it suffered damages. Again, Schirado's argument is premised on his contention that Farmers was required to present direct testimony from individual policyholders stating that they left Farmers, or took out policies with other companies, because of Schirado's wrongful conduct. If, as we have previously concluded, there was sufficient evidence to support an inference that Schirado's conduct caused potential clients to take out policies with other companies which would have been accepted by Farmers and caused some existing Farmers' policyholders to drop their coverage with Farmers, the trier of fact could further conclude that those results caused economic damages to Farmers. If Farmers lost policyholders because of wrongful conduct by Schirado, it naturally follows that there would be a concurrent loss of premiums for those lost policies.

[13, 14] [¶ 17] Schirado argues that evidence of damages is too speculative and the trier of fact would be left to merely guess at an appropriate award of damages. This Court has addressed the standard used when a party claims evidence of damages is too speculative:

Evidentiary imprecision on the amount of damages does not preclude recovery. As this Court said in the syllabus in *North Am. Pump Corp. v. Clay Equip. Corp.*, 199 N.W.2d 888, 891 (N.D.1972):

6. Where damages obviously have been suffered and there is no definite evidence available for an exact determination of the amount of damages resulting from a breach of contract, the best evidence which the circum-

stances will permit is all the law requires.

7. The uncertainty which prevents recovery of damages is the uncertainty of the fact of damages, not the uncertainty of the amount. Where it is reasonably certain that substantial damages have resulted, mere uncertainty as to the exact amount will not preclude recovery.

"In a case where the amount of damages may be hard to prove, the amount of damages is to be left to the sound discretion of the finder of facts." *B.W.S. Investments v. Mid–Am Restaurants, Inc.*, 459 N.W.2d 759, 764 (N.D.1990). *Keller v. Bolding*, 2004 ND 80, ¶ 21, 678 N.W.2d 578. If the trier of fact in this case determines Farmers lost existing and potential clients because of Schirado's wrongful conduct, damages "obviously have been suffered" and any uncertainty goes to the amount, not the fact, of damages. The determination of damages, if any, is therefore left to the sound discretion of the trier of fact at trial.

## V

[¶ 18] The district court also granted summary judgment to Schirado on his counterclaim for the balance of his Contract Value payments. Schirado's entitlement to those payments under the contract is intertwined with Farmers' claims of breach of contract and tort, and may be affected by the resolution of those issues at trial. Accordingly, we reverse the summary judgment granting Schirado the remainder of his Contract Value payments.

## VI

[¶ 19] We have considered the remaining issues and arguments raised by the parties and they are either unnecessary to our decision or are without merit. The district court erred in determining that

there were no genuine issues of material fact and that Schirado was entitled to judgment as a matter of law. We reverse the summary judgment and remand for further proceedings in accordance with this opinion.

[¶ 20] GERALD W. VANDE WALLE, C.J., MARY MUEHLEN MARING, CAROL RONNING KAPSNER, and DALE V. SANDSTROM, JJ., concur.