2006 ND 220

**Jason HASPER, Plaintiff and Appellant,**

v.

**CENTER MUTUAL INSURANCE COMPANY, Defendant and Appellee.**

No. 20050316.

Supreme Court of North Dakota.

Oct. 23, 2006.

David S. Maring (argued) and Anthony J. Weiler (on brief), Maring Williams Law Office, Bismarck, N.D., for plaintiff and appellant.

Steven A. Storslee, Storslee Law Firm, P.C., Bismarck, N.D., for defendant and appellee.

KAPSNER, Justice.

[¶ 1]   Jason Hasper has appealed from a judgment dismissing his claim for under-insured motorist ("UIM") benefits against Center Mutual Insurance Company ("Center Mutual"). We reverse and remand for further proceedings, concluding that a UIM insurer which seeks to deny coverage based upon the insured's failure to notify the insurer of a proposed settlement with the tortfeasor must demonstrate that it

suffered actual prejudice resulting from the lack of notice.

## I

[¶ 2] In November 2000, Hasper was injured in an automobile accident in South Dakota while riding as a passenger in a vehicle driven by his cousin, Chris Goehring. The vehicle was insured by a policy from Allied Insurance issued to Goehring's parents, Larry and Susan Goehring. Allied's claim representative contacted Hasper and advised him that the Goehrings' policy carried a limit of $100,000. On January 17, 2001, Hasper received the $100,000 policy limits from Allied and executed a release discharging Larry and Susan Goehring, "and all other persons for whose fault the Released Party is or is claimed to be liable," from all claims arising out of the accident.

[¶ 3] At the time of the accident, Hasper was a resident of his parents' household and his parents had an automobile insurance policy from Center Mutual which provided UIM coverage and personal injury protection ("PIP") coverage. Hasper did not contact or provide any notice to Center Mutual prior to signing the release and accepting the $100,000 from Allied. In April 2001, Hasper's attorney sent a letter to Center Mutual indicating Hasper would be making a claim for UIM benefits and stating that Hasper "intends to sign a release releasing the other driver, Chris Goehring," unless Center Mutual preserved its subrogation claim against Goehring by substituting its own check for $100,000 to Hasper. Center Mutual declined to substitute its check, stating that it was aware Hasper had previously signed a release and accepted the policy limits from Allied.

[¶ 4] In May 2002, Hasper sued Center Mutual seeking to recover UIM and PIP benefits. On cross-motions for summary judgment on the UIM claim, the district court determined that Hasper's failure to give prior notice of the settlement to Center Mutual prohibited him from now seeking UIM benefits. An order dismissing the UIM claim was entered, and the PIP claim went to trial. In July 2005, judgment was entered awarding Hasper damages against Center Mutual upon his PIP claim. Hasper appealed, alleging the district court erred in granting partial summary judgment dismissing his UIM claim against Center Mutual.

## II

[¶ 5] Summary judgment is a procedural device for the prompt resolution of a controversy on the merits without a trial if there are no genuine issues of material fact or inferences that can reasonably be drawn from undisputed facts, or if the only issues to be resolved are questions of law. *State ex rel. North Dakota Hous. Fin. Agency v. Center Mut. Ins. Co.*, 2006 ND 175, ¶ 8, 720 N.W.2d 425; *Farmers Ins. Exch. v. Schirado*, 2006 ND 141, ¶ 8, 717 N.W.2d 576. A party moving for summary judgment has the burden of showing there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Witzke v. City of Bismarck*, 2006 ND 160, ¶ 7, 718 N.W.2d 586; *Schirado*, at ¶ 8. In determining whether summary judgment was appropriately granted, we must view the evidence in the light most favorable to the party opposing the motion, and that party will be given the benefit of all favorable inferences which can reasonably be drawn from the record. *Witzke*, at ¶ 7; *Schirado*, at ¶ 9. On appeal, this Court decides whether the information available to the district court precluded the existence of a genuine issue of material fact and entitled the moving party to judgment as a matter of law. *Schirado*, at ¶ 9.

Whether the district court properly granted summary judgment is a question of law which we review de novo on the entire record. *Center Mutual*, at ¶ 8; *Witzke*, at ¶ 7.

### III

[¶ 6] The dispositive issue on appeal is whether Hasper's failure to provide prior notice to Center Mutual of the settlement with the Goehrings precludes him from collecting UIM benefits from Center Mutual.

### A

[¶ 7] In North Dakota, UIM coverage is essentially a function of statute. *Score v. American Family Mut. Ins. Co.*, 538 N.W.2d 206, 209–10 (N.D.1995). Under N.D.C.C. § 26.1–40–15.3(1), an insurer must provide UIM coverage at limits equal to the uninsured motorist coverage, and the UIM coverage must pay compensatory damages which the insured would be legally entitled to collect from the owner or operator of the underinsured vehicle. A UIM insured who wishes to settle with the underinsured tortfeasor generally must give written notice of the proposed settlement to the UIM insurer, and coverage may be excluded if the insured fails to give notice:

> The uninsured and underinsured coverages provided for in sections 26.1–40–15.1 through 26.1–40–15.7 do not apply to bodily injury, sickness, disease, or death resulting therefrom of an insured:
>
> . . . .
>
> 7. When the insured, without the written consent of the insurer, shall make any agreement or settlement with any person who may be legally liable therefor, if such agreement adversely affects the rights of the insurer. The insurer is not bound by any agreement or settlement

without its prior knowledge and consent. This limitation does not apply to underinsured motorist coverage when the insured has advised the insurer, in compliance with subsection 2 of section 26.1–40–15.5, and the insurer has failed to advance the required payment to protect its right of reimbursement and subrogation.

N.D.C.C. § 26.1–40–15.6(7); *see Sandberg v. American Family Ins. Co.*, 2006 ND 198, ¶ 10, 722 N.W.2d 359. Upon receipt of notice of a proposed settlement, the UIM insurer must substitute its own funds for the proposed settlement to preserve its subrogation rights against the underinsured tortfeasor:

> No insurer providing underinsured motorist coverage has a right of subrogation against an underinsured motorist if the insurer has been provided with a written notice in advance of an agreement, settlement, or judgment between its insured and the underinsured motorist, and the insurer fails to advance a payment to the insured in an amount equal to the tentative agreement or settlement within thirty days following receipt of such notice. An insurer advancing such payment has full rights of subrogation.

N.D.C.C. § 26.1–40–15.5(2).

[¶ 8] The language of the UIM endorsement to the Haspers' policy from Center Mutual essentially corresponds to the statutory provisions. Section A(2) of the endorsement provides for UIM coverage if the policy limits of the underinsured motorist have been exhausted by judgments or payments, or if Center Mutual has advanced funds to substitute for a proposed settlement. Section E(2)(c) of the endorsement creates the duty of the insured to notify Center Mutual of a proposed settlement:

A person seeking Underinsured Motorists Coverage must also promptly notify us in writing of a tentative settlement between the "insured" and the insurer of the "underinsured motor vehicle" and allow us 30 days to advance payment to that "insured" in an amount equal to the tentative settlement to preserve our rights against the insurer, owner or operator of such "underinsured motor vehicle".

[¶ 9] Under North Dakota law and these policy provisions, the insured should promptly notify the UIM carrier if a tentative settlement has been reached with the tortfeasor and the tortfeasor's insurer. The UIM insurer then has thirty days to investigate and determine whether there is a reasonable possibility of collecting more than the policy limits from the underinsured tortfeasor. The insurer then may decide whether to substitute its check in an amount equal to the proposed settlement to its insured and preserve its subrogation rights.

## B

[¶ 10] The crucial question presented in this case is whether Hasper's acceptance of the settlement and release of the Goehrings without providing prior notice to Center Mutual "adversely affects the rights of the insurer." N.D.C.C. § 26.1–40–15.6(7). The district court concluded Center Mutual's rights were adversely affected because Center Mutual could have sought a judgment against Chris Goehring which may have been collectable in the future. In essence, the court held that failure to provide prior notice of a settlement will always, as a matter of law, adversely affect the UIM insurer because it will have lost its right to pursue a subrogation claim which theoretically might be collectable some time in the future. The district court thereby effectively read the requirement of an adverse effect out of the statute because, under the court's rationale, there will always be a loss of subrogation rights and a corresponding adverse effect.

[¶ 11] The vast majority of courts considering similar notice-of-settlement or consent-to-settle clauses have held that the insurer has the burden of establishing that an unauthorized settlement had an actual adverse effect on the insurer's interests. *See, e.g., Shelter Mut. Ins. Co. v. Bough,* 310 Ark. 21, 834 S.W.2d 637, 640 (1992) (insurer failed to show insured's unauthorized settlement with tortfeasor and tortfeasor's insurance carrier prejudiced its right of subrogation or possible recovery from tortfeasor or any other potentially liable party); *Taylor v. Government Employees Ins. Co.,* 90 Hawai'i 302, 978 P.2d 740, 749 (Haw.1999) (legitimate invocation of consent-to-settle provision requires insurer to demonstrate prejudice from insured's failure to obtain insurer's consent before settling with tortfeasor); *Bantz v. Bongard,* 124 Idaho 780, 864 P.2d 618, 624 (Idaho 1993) (consent-to-settle clause should not be enforced to work forfeiture of coverage unless insurer can show actual prejudice from settlement); *Hoel v. Crum & Forster Ins. Co.,* 51 Ill.App.3d 624, 9 Ill.Dec. 390, 366 N.E.2d 901, 905 (1977) (insurer must demonstrate it was actually hampered or substantially prejudiced by settlement); *Kapadia v. Preferred Risk Mut. Ins. Co.,* 418 N.W.2d 848, 852 (Iowa 1988) (insurer must demonstrate actual prejudice by showing it could have collected from tortfeasor under subrogation clause); *Greenvall v. Maine Mut. Fire Ins. Co.,* 1998 ME 204, ¶ 11, 715 A.2d 949 (insurer must demonstrate prejudice from insured's failure to obtain insurer's consent to settlement); *MacInnis v. Aetna Life & Cas. Co.,* 403 Mass. 220, 526 N.E.2d 1255, 1258 (Mass.1988) (insurer must prove material prejudice resulting from insured's

unauthorized settlement); *Sorensen v. Farmers Ins. Exch.*, 279 Mont. 291, 927 P.2d 1002, 1005 (1996) (insured not barred from collecting on policy if insurer is unable to demonstrate prejudice); *Silvers v. Horace Mann Ins. Co.*, 324 N.C. 289, 378 S.E.2d 21, 27–28 (1989) (insurer bears burden of proving it was materially prejudiced by insured's unauthorized settlement); *Hernandez v. Gulf Group Lloyds*, 875 S.W.2d 691, 692–93 (Tex.1994) (consent-to-settlement exclusion unenforceable absent showing of prejudice by insurer); *State Farm Mut. Auto. Ins. Co. v. Green*, 2003 UT 48, ¶ 32, 89 P.3d 97 (requiring insurer to show actual prejudice strikes appropriate balance between protecting insurer's interest and avoiding forfeiture when insurer was not harmed); *Kronjaeger v. Buckeye Union Ins. Co.*, 200 W.Va. 570, 490 S.E.2d 657, 669 (1997) (to justify refusal to pay underinsured benefits, insurer must show prejudice from insured's unauthorized settlement); *see also* 9 Lee R. Russ & Thomas F. Segalla, *Couch on Insurance* § 124.8 (3d ed.2005); 3 Alan I. Widiss & Jeffrey E. Thomas, *Uninsured and Underinsured Motorist Insurance* § 43.5 (3d ed.2005); *cf. American Family Mut. Ins. Co. v. Baumann*, 459 N.W.2d 923, 927 (Minn.1990) (unauthorized settlement raises a presumption of prejudice and insured bears the burden of showing the absence of prejudice); *Ferrando v. Auto–Owners Mut. Ins. Co.*, 98 Ohio St.3d 186, 781 N.E.2d 927, 946–47 (Ohio 2002) (insured's breach of a consent-to-settle clause raises a presumption of prejudice to the insurer, and the insured bears the burden of presenting evidence rebutting the presumption); *Ranes v. American Family Mut. Ins. Co.*, 219 Wis.2d 49, 580 N.W.2d 197, 202 (Wis.1998) (a presumption of prejudice arises from an insured's failure to provide notice of settlement, and the insured bears the burden of rebutting the presumption). *Contra Lee v. Auto–Owners Ins. Co.*, 218 Mich.App. 672, 554 N.W.2d 610, 612 (1996) (no need for insurer to prove actual prejudice from insured's unauthorized settlement with tortfeasor); *Stevens v. Merchants Mut. Ins. Co.*, 135 N.H. 26, 599 A.2d 490, 492–93 (1991) (enforcement of a consent-to-settle clause is not dependent on a showing of prejudice to the insurer); *Frey v. Independence Fire & Cas. Co.*, 698 P.2d 17, 22 (Okla. 1985) (insured's settlement with tortfeasor ended insurer's subrogation rights, and insurer had a "complete defense" to recovery against it); *Manzo v. AMICA Mut. Ins. Co.*, 666 A.2d 417 (R.I.1995) (insurer need not show it was prejudiced by insured's failure to obtain consent to settlement).

[¶ 12] The cases following the majority stance make it clear the insurer must show more than the mere fact that the settlement abrogated its subrogation rights against the tortfeasor. *See Bantz*, 864 P.2d at 623–24; *Kapadia*, 418 N.W.2d at 852; *Green*, 2003 UT 48, ¶ 33, 89 P.3d 97. The insurer must demonstrate an "actual, rather than theoretical, impairment of [its] ability to recover through subrogation," and UIM coverage should not be denied "on the basis of a merely technical breach that has no effect on the insurer's ability to recover through subrogation." *Green*, at ¶ 31. Because the purpose of consent-to-settle clauses "is almost exclusively to protect the insurer's subrogation rights against the party released," such clauses should not be enforced to deny the UIM claim "[w]hen the insurer's subrogation rights are unaffected by the settlement." *Greenvall*, 1998 ME 204, ¶ 10, 715 A.2d 949 (quoting *Bazinet v. Concord Gen. Mut. Ins. Co.*, 513 A.2d 279, 282 (Me.1986)). As explained in 3 Widiss, *supra*, § 43.5, at 558–59, "[t]he loss of an insurer's subrogation right may not be significant," because "[i]n many instances, pursuit of any recov-

ery from an insured tortfeasor beyond the available liability insurance would be fruitless." *See also Kapadia,* at 852 (quoting *Bailey v. State Farm Fire & Cas. Ins. Co.,* 621 F.Supp. 1016, 1018 (S.D.Miss.1985)) (depending upon the tortfeasor's financial situation, an insurer's subrogation rights may be "of little, if any, value"). If the consent-to-settle clause is enforced without a showing of actual prejudice, it results in a forfeiture of the UIM coverage and "would produce an undeserved windfall to the insurance company while depriving an otherwise deserving insured person of recovery." *Bantz,* at 624. Requiring the insurer to demonstrate actual prejudice "strikes an appropriate balance between protecting an insurer's interests and avoiding forfeiture of coverage when an insurer has not been harmed." *Green,* at ¶ 32. The law abhors a forfeiture. *Keller v. Bolding,* 2004 ND 80, ¶ 18, 678 N.W.2d 578; *Johnson v. Gray,* 265 N.W.2d 861, 864 (N.D.1978).

[¶ 13] The rationale of these cases is in accord with this Court's holding in *Finstad v. Steiger Tractor, Inc.,* 301 N.W.2d 392 (N.D.1981). In *Finstad,* at 398, the Court concluded an insurer seeking to avoid coverage based upon the insured's failure to provide timely notice of the claim, as outlined in the policy provisions, was required to demonstrate the likelihood of appreciable prejudice resulting from the lack of notice. Stressing that allowing the insurer to avoid coverage without a showing of prejudice would work a forfeiture, this Court quoted with approval the "well-reasoned" rationale of the Supreme Court of New Jersey in an earlier case:

> "[A]lthough the policy may speak of the notice provision in terms of 'condition precedent,' . . . nonetheless what is involved is a forfeiture, for the carrier seeks, on account of a breach of that provision, to deny the insured the very thing paid for. This is not to belittle the need for notice of an accident, but rather to put the subject in perspective. Thus viewed, it becomes unreasonable to read the provision unrealistically or to find that the carrier may forfeit the coverage, even though there is no likelihood that it was prejudiced by the breach. To do so would be unfair to insureds.
>
>  . . . .
>
> "The insurance contract not being a truly consensual arrangement and being available only on a take-it-or-leave-it basis and the subject being in essence a matter of forfeiture, we think it appropriate to hold that the carrier may not forfeit the bargained-for protection unless there are both a breach of the notice provision and a likelihood of appreciable prejudice. The burden of persuasion is the carrier's."

*Finstad,* 301 N.W.2d at 397–98 (quoting *Cooper v. Government Employees Ins. Co.,* 51 N.J. 86, 237 A.2d 870, 873–74 (1968)).

[¶ 14] Several reasons have been expressed for placing the burden of proving actual prejudice on the insurer:

> There are several rationales for this approach. First, the insurer is in the best position both to assess whether it has been prejudiced and to then produce evidence for the court that is relevant to an adjudication. Second, in effect, it recognizes the difficulty of requiring a claimant to attempt to prove the "negative fact" that the insurer was not prejudiced. Finally, if no clear proof is available, such an allocation serves to avoid a forfeiture of coverage.

3 Widiss, *supra,* § 43.5, at 564; *see also Sorensen,* 927 P.2d at 1005 (quoting Widiss and concluding the rule "places the burden on the insurer which has collected premiums, rather than on an injured claimant, to show that the insurer's subrogation claim has potential value"); *Silvers,* 378 S.E.2d

at 28 (quoting *Great Am. Ins. Co. v. C.G. Tate Constr. Co.*, 303 N.C. 387, 279 S.E.2d 769, 775–76 (1981)) (the burden is upon the insurer "because it is seeking to escape . . . the very thing which it is paid to do," "the insurer is in a much better position than the insured to know what factors are relevant to its posture regarding settlement and to recognize prejudice," and requiring the insured to show an absence of prejudice would force him to prove a negative).

[¶ 15]   The nature of the showing required of the insurer and the factors relevant to the determination of actual prejudice have been summarized in *Green*, 2003 UT 48, ¶ 33, 89 P.3d 97:

> In order to show actual prejudice, it is not sufficient for an insurer to show that its right of subrogation has been extinguished.   Rather, the insurer may deny coverage only if it would have had a realistic possibility of recovering from the tortfeasor had its subrogation right not been foreclosed by the insured's settlement with the tortfeasor.   This requires an assessment of factors such as the assets held by the tortfeasor, the strength of the insurer's subrogation claim (i.e., the strength of the underlying tort claim), the expenses and risks of litigating the insured's cause of action, and the extent of the victim's damage.

*See also Taylor*, 978 P.2d at 749 (quoting *Gibson v. State Farm Mut. Auto. Ins. Co.*, 123 Ohio App.3d 216, 704 N.E.2d 1, 6 (Ohio Ct.App.1997)) (relevant factors include "the amount of assets held by the tortfeasor, the likelihood of recovery via subrogation, and the expenses and risks of litigating the insured's cause of action"); *Kapadia*, 418 N.W.2d at 852 (the insurer must establish that, absent the settlement, "it could have collected from the tort-feasor" through subrogation); *MacInnis*, 526 N.E.2d at 1261 and n. 16 (relevant factors

include the amount of the tortfeasor's assets, the likelihood of success of a claim, the amount of the insured's damages, and the cost of litigating the claim); 9 Russ, *supra*, § 124.10 ("the insurer's subrogation rights are generally not prejudiced by a nonconsensual settlement when . . . the tortfeasor lacks assets from which an insurer might recover under its subrogation rights").   The referenced factors would not necessarily be an exclusive list of what demonstrates actual prejudice.

■   [¶ 16]   We agree with the rationale and reasoning of the foregoing cases.   Accordingly, we hold that a UIM insurer which seeks to deny coverage based upon the insured's failure to notify the insurer of a proposed settlement with the tortfeasor must demonstrate that it suffered actual prejudice resulting from the lack of notice.

### C

■   [¶ 17]   In this case, the district court decided this issue within the context of summary judgment and determined that Center Mutual had been adversely affected by lack of notice of the settlement because it could have sought a judgment against Chris Goehring which may have theoretically been collectable at some point in the future.   The determination whether an insurer has been adversely affected or prejudiced by an unauthorized settlement is a question of fact that is generally inappropriate for summary judgment.   *See, e.g., Hoel*, 9 Ill.Dec. 390, 366 N.E.2d at 905; *Kapadia*, 418 N.W.2d at 852; *Greenvall*, 1998 ME 204, ¶ 13, 715 A.2d 949; *MacInnis*, 526 N.E.2d at 1261; *Green*, 2003 UT 48, ¶ 37, 89 P.3d at 97; 3 Widiss, *supra*, § 43.5.

■   [¶ 18]   Center   Mutual   contends, and the trial court concluded, that a tortfeasor's assets are immaterial to the determination   whether   the   settlement

prejudiced the insurer's rights, because the insurer is adversely affected as a matter of law when it loses its opportunity to attempt to secure a judgment against the tortfeasor through subrogation. Center Mutual stresses that N.D.C.C. § 26.1–40–15.6(7) uses the phrase "adversely affects the rights of the insurer," and does not mention assets of the tortfeasor. Center Mutual essentially contends that its "rights" were adversely affected merely by the fact it lost its right to subrogation, because it might have obtained a judgment that might have been collectable in the future. This theory has been widely rejected. *See, e.g., Southeastern Fid. Ins. Co. v. Earnest,* 395 So.2d 230, 230–31 (Fla. Dist.Ct.App.1981); *Bantz,* 864 P.2d at 623–24; *Kapadia,* 418 N.W.2d at 852; *Green,* 2003 UT 48, ¶ 33, 89 P.3d 97. Allowing an insurer to avoid coverage when it lost subrogation rights which carried no reasonable possibility of collection beyond the tendered policy limits would constitute a forfeiture and "would produce an undeserved windfall to the insurance company." *Bantz,* at 624. Accordingly, we agree with the authorities holding that, in determining whether the insurer has suffered actual prejudice, relevant factors include the amount of the tortfeasor's assets, the likelihood of recovery via subrogation, the extent of the insured's damages, and the expenses and risks of litigating the insured's cause of action. *See Taylor,* 978 P.2d at 749; *Kapadia,* 418 N.W.2d at 852; *MacInnis,* 526 N.E.2d at 1261 and n. 16; *Green,* 2003 UT 48, ¶ 33, 89 P.3d 97; 9 Russ, *supra,* § 124.10.

[¶ 19] The district court applied an incorrect legal standard and failed to consider the appropriate factors to determine whether Center Mutual suffered actual prejudice by Hasper's settlement and release. On the record before us, genuine issues of material fact remain on whether Center Mutual was actually prejudiced by Hasper's failure to give prior notice of the proposed settlement. Summary judgment was therefore inappropriate, and we reverse the judgment and remand for a determination of actual prejudice applying the proper legal standard.

## IV

[¶ 20] We have considered the remaining issues and arguments raised by the parties and find they are either unnecessary to our decision or are without merit. We reverse the judgment and remand for further proceedings consistent with this opinion.

[¶ 21] DALE V. SANDSTROM, Acting C.J., and WILLIAM F. HODNY, S.J., EVERETT NELS OLSON, S.J., and DANIEL J. CROTHERS, J., concur.

[¶ 22] The Honorable EVERETT NELS OLSON, S.J., and the Honorable WILLIAM F. HODNY, S.J., sitting in place of VANDE WALLE, C.J., and MARING, J., disqualified.